FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 22 2008

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

)
)
**BALE CHEVROLET COMPANY** )
)
    **Plaintiff** )
)
      **v.** )
)
**UNITED STATES OF AMERICA** )
)
    **Defendant** )

Docket No. __4·08·CV·0056 JLH__

This case assigned to District Judge _Holmes_
and to Magistrate Judge _Cavaneau_

## COMPLAINT

Comes now the Plaintiff, Bale Chevrolet Company, by and through its undersigned counsel, and for its causes of action, brought against the Internal Revenue Service, an agency of the United States, does state and allege as follows:

### PLAINTIFF

1. Bale Chevrolet Company is a corporation created under the laws of the State of Arkansas. Bale Chevrolet Company maintains its corporate office and principal place of business in Little Rock, Pulaski County, Arkansas.

### DEFENDANT

2. The United States of America is the sovereign federal government, of which the Department of the Treasury is a part. The Internal Revenue Service (IRS) is the agency of the United States Department of Treasury that made the erroneous and illegal assessments of "intentional disregard" penalties against the Plaintiff that are being contested in this civil action.

**JURISDICTION**

3.    This Court has jurisdiction over the subject matter of this suit pursuant to the provisions of 28 U.S.C. § 1346(a)(1).

**VENUE**

4.    Venue is properly laid in the Eastern Judicial District of Arkansas, Western Division, pursuant to the provisions of 28 U.S.C. § 1391(e)(3).

**GENERAL FACTUAL ALLEGATIONS**

5.    Bale Chevrolet Company is a corporation that was formed in 1923, under the laws of the State of Arkansas.   Since 1923, this company has continually been engaged in the business of operating a new and used automobile and truck dealership franchised to it by the General Motors Corporation's Chevrolet Division.  The corporation's principal place of business is now located at 13101 Chenal Parkway, Little Rock, Arkansas 72211.

6.  Bale Chevrolet Company has always been a closely held corporation, with the stock of this company being owned by members of the Bale family.  The present principal owner of Bale Chevrolet Company  is John H. Bale of Little Rock, Arkansas, who has spent his entire life working with this family owned vehicle dealership.  John H. Bale also participates in a number of other civic and charitable activities in the State of Arkansas, including sitting as a member of the Board of Trustees of the Arkansas Children's Hospital.

7.    Bale Chevrolet Company is a high volume dealership with more than 2,500 new automobiles and trucks being sold each year, as well as a large number of used automobiles and trucks being sold by the company each year.

8.   For many years, John H. Bale has adopted and implemented a policy of

2

creating a drug-free workplace at the Bale Chevrolet Company's dealership in Little Rock, Arkansas. Each applicant applying for employment with the company must take an initial drug test, before he or she will be employed. Also, random drug tests are conducted for all of the Bale employees on an ongoing basis. In fact, on numerous occasions, John H. Bale has invited the Little Rock Police Department to survey the premises of Bale Chevrolet Company's dealership in Little Rock, Arkansas by the use of one or more "drug dogs," to determine whether or not any employees have brought drugs into their workplace at the dealership.

9.   If an employee fails to pass a random drug test administered by Bale Chevrolet Company, such failure of the drug test is grounds for immediate termination of the employee's employment with the company.

10.   Bale Chevrolet Company is a member, in good standing, of the Arkansas Automobile Dealers' Association and the National Automobile Dealers' Association. Bale Chevrolet Company strives to continually meet the high standards set for their dealer-members by these industry trade groups.

11.   Bale Chevrolet Company makes every "good faith" attempt to be a good corporate citizen by voluntarily complying with all federal, state and local regulations and taxes to which its dealership business is subjected.

12.   Since 1982, when Congress first enacted the requirement that companies engaged in the business of selling automobiles and trucks were required to file Forms 8300, Report of Cash Payments Over $10,000 of Cash Received in a Trade or Business, Bale Chevrolet Company has endeavored, in "good faith," to comply, in all respects, with all of the provisions of this federal tax law.

3

**INFORMATION RETURN FILING REQUIREMENTS FOR VEHICLE DEALERS RECEIVING CASH OR CASH EQUIVALENTS FROM CUSTOMERS IN EXCESS OF $10,000**

13.    In 1982, the Internal Revenue Service was having great difficulty in collecting the proper amount of federal income taxes on certain transactions (many of which were referred to as "cash transactions"), because the affected taxpayers involved in these transactions were simply not reporting such transactions on their federal income tax returns they filed with the IRS.

14.    In 1982, representatives of the Department of Treasury, the Internal Revenue Service and the Tax Division of the Justice Department requested, and Congress reacted by enacting the Tax Equity and Fiscal Responsibility Act (TEFRA), to require the filing of "information returns" by a number of businesses, which, prior to that time, had not been required to file "information returns" with the IRS on transactions in which they were involved.

15.    With regard to companies that were engaged in the businesses of selling cars, boats and jewelry, certain provisions of TEFRA required that these types of businesses begin to file "information returns" (Forms 8300) with the IRS, if the business received more than $10,000 in cash or cash equivalents from its customer in the sale of a product sold by such business.

16.    The procedural system created by the Internal Revenue Service for the filing of Forms 8300 by the motor vehicle dealers (located throughout the United States) was to require the filing of these completed Forms 8300 (when the motor vehicle dealer received more than $10,000 in cash or cash equivalents from a customer, as part or all of the consideration for the purchase of a vehicle).  The completed Form 8300 was to be sent

4

by the motor vehicle dealer (within a set period of time, after such sale) to the IRS office in Detroit, Michigan. In this Detroit, Michigan office, the IRS then compiled the information supplied by the motor vehicle dealers and allegedly used it for tax enforcement purposes.

17.   Bale Chevrolet Company created an internal system for its compliance with this Form 8300 filing program. In each year following the inception of this "information return" filing requirement, Bale Chevrolet Company completed and forwarded these Forms 8300 to the IRS on any sale to which the reporting requirement was applicable.

## IRS AUDIT OF BALE CHEVROLET COMPANY'S COMPLIANCE WITH THE FILING OF FORMS 8300

18.   Bale Chevrolet Company has been audited on three (3) separate occasions by representatives of the Internal Revenue Service, concerning the company's compliance with the provisions of 26 U.S.C. § 6050I, which statute requires the filing of Forms 8300 with the Internal Revenue Service by a motor vehicle dealer, if the motor vehicle dealer receives $10,000 or more in cash or cash equivalents from a customer in the purchase of a vehicle.

19.   The first audit of Bale Chevrolet Company by the IRS was conducted in the early 1990s. Such audit by the IRS of Bale Chevrolet Company's history of compliance with the requirement of filing Forms 8300 with the IRS did not raise any questions or find any errors with regard to the company's history of filing Forms 8300 for the years covered by that first audit.

20.   In 1996, a Revenue Agent of the Internal Revenue Service's Little Rock, Arkansas office conducted a second audit of Bale Chevrolet Company's compliance with the provisions of 26 U.S.C. § 6050I. As a result of that audit, the Revenue Agent determined that one (1) required Form 8300 had not been timely filed by the company with

5

the IRS' Detroit, Michigan office, but that all other Forms 8300 had been properly and timely filed by Bale Chevrolet Company with the IRS reporting other cash or cash equivalent transactions where Bale Chevrolet Company received more than $10,000 from its customer during the years subject to that audit.

21.    During the year 2000, the same Revenue Agent who had conducted the 1996 audit of Bale Chevrolet Company's compliance with the Form 8300 program, again conducted an audit of Bale Chevrolet Company's compliance with the provisions of 26 U.S.C. § 6050I for the years 1998, 1999 and 2000.  Bale Chevrolet Company had sold more than 7,000 new automobiles and trucks through its dealership, and a very large number of used automobiles and trucks to customers, during this three (3) year period of time.

22.    During these three (3) years, Bale Chevrolet Company tried, in "good faith," to meet all of the requirements of this Form 8300, "information return" filing with the IRS.  In several instances, during these three (3) years, Bale Chevrolet Company's employees completed and filed Forms 8300 with the Detroit, Michigan office of the IRS, where the representatives of the IRS in Detroit, Michigan determined that Bale Chevrolet Company did not need (pursuant to the provisions of the applicable statutes and IRS regulations) to have filed such Forms 8300.  In those instances, the IRS returned the Forms 8300 to Bale Chevrolet Company and instructed the company not to file similar Forms 8300 in such situations in the future.

23.    Also, in several other instances (during this three (3) year period of time), Bale Chevrolet Company filed the Forms 8300 with the IRS' Detroit, Michigan office to report receipt of more than $10,000 in cash or cash equivalents from a customer, only to have those Form 8300 returned (with a request that the Form 8300 be resubmitted),

because the Form 8300 used by Bale Chevrolet Company was *not* the "current" Form 8300 that the IRS was using.

24.    As a result of the 2000 audit conducted by the IRS agent of Bale Chevrolet Company's compliance with the required filing of Forms 8300 with the Detroit, Michigan office of the IRS during the years 1998, 1999 and 2000, the Revenue Agent determined that Bale Chevrolet Company had *not* filed four (4) Forms 8300 that were required to be filed.  In at least two (2) of these four (4) instances, personnel of Bale Chevrolet Company had completed the Forms 8300 and required the customer purchasing the vehicle to sign the Form 8300 (which was *not* a requirement of the IRS' regulations, adopted under the provisions of 26 U.S.C. § 6050I).  Unfortunately, in those two instances, the Forms 8300 were placed in the company's retained file covering the sale of the vehicle (instead of being sent to the IRS).  In another instance, the Form 8300 was completed by personnel of Bale Chevrolet Company, but the IRS had no record of such Form 8300 ever being received by the Detroit, Michigan office of the IRS.

25.    As with the IRS' 1996 compliance audit of Bale Chevrolet Company, it appeared that there was one (1) instance (during this three (3) year period of time), where Bale Chevrolet Company should have, but did not, timely prepare or file a Form 8300 on the transaction involving more than $10,000 in cash or cash equivalents in the sale of a vehicle to a customer.

26.    Once this situation was brought to the attention of the management personnel of Bale Chevrolet Company, the "information returns," Forms 8300, on all four (4) of these questioned transactions were prepared by personnel of Bale Chevrolet Company and such completed Forms 8300 were filed with the IRS' Detroit, Michigan office. In addition, separate written notifications were prepared by personnel of Bale Chevrolet

7

Company and sent to the four (4) individuals involved in the purchase of the vehicles which involved the payment to Bale Chevrolet Company of cash or cash equivalents that totaled more than $10,000.

## ASSESSMENT PROPOSED BY AUDITING REVENUE AGENT

27.     At the completion of his audit of the compliance records of Bale Chevrolet Company for the years 1998, 1999 and 2000, with regard to the company's filing of Forms 8300 with the IRS' Detroit, Michigan office (to disclose to the IRS transactions that the company had with customers where the customer supplied more than $10,000 in cash or cash equivalents as part of his or her consideration for the purchase of a vehicle) the auditing agent proposed that the IRS should assess four (4) separate "intentional disregard" penalties, in the amount of $25,000 per instance (as provided by 26 U.S.C. § 6721(e)) against Bale Chevrolet Company.  Thus, because of Bale Chevrolet Company's failure to file the four (4) Forms 8300 with the IRS' Detroit, Michigan office, over this three (3) year period of time, the Revenue Agent proposed that Bale Chevrolet Company had to pay the IRS the total amount of $100,000 for the alleged violation of the "intentional disregard" penalties, as well as $50.00 per instance (a total of $200.00) for failure to timely file these Forms 8300.

28.     Counsel for Bale Chevrolet Company requested a meeting with the auditing Revenue Agent's supervisors, who were stationed with the IRS' New Orleans, Louisiana office.  At this meeting, the company's counsel attempted to have the proposed penalty for the company's failure to file the Forms 8300 reduced from the $25,000 per instance "intentional disregard" penalty to the $50.00 per instance "negligence penalty," provided as an alternative by the provisions of 26 U.S.C. § 6721(a).  These efforts proved fruitless, since these representatives of the IRS did not appear to be interested in the

8

particular facts and circumstances surrounding each instance involving the company's failure to file the four (4) Forms 8300 on a timely basis.

29.    Instead, it appeared that these representatives of the IRS were attempting to hold Bale Chevrolet Company to a standard of "strict liability" for the "intentional disregard" penalty, for the company's failure to have timely and properly filed these four (4) Forms 8300. These IRS representatives indicated to the company's counsel that they also supervised a program involving casinos operating in the State of Mississippi, where there were no errors found to exist by any casino in complying with the requirement of filing Forms 8300 with the IRS by these various casinos.

30.    As a result of this audit by representatives of the IRS of Bale Chevrolet Company's compliance record in the filing of Forms 8300 with the IRS' Detroit, Michigan office (for the three (3) years of 1998, 1999 and 2000), the IRS assessed four (4) separate penalties of $25,000 each (a total of $100,000) against Bale Chevrolet Company, under the provisions of the "intentional disregard" penalty. These IRS representatives asserted, based upon the facts and circumstances of each of the four (4) instances where Bale Chevrolet Company failed to file the required Form 8300, that the employees of Bale Chevrolet Company had "intentionally disregarded" their obligation to file these four (4) Forms 8300 with the IRS.

### BALE CHEVROLET'S PROTEST OF IRS ASSESSMENT

31.    By letter dated October 12, 2001, the counsel for Bale Chevrolet Company filed a "protest" of the action taken by the IRS to assess $100,000 in "intentional disregard" penalties against Bale Chevrolet Company by the IRS, and the company's counsel requested this matter be transferred to the Appellate Division of the IRS for consideration.

32.    In November and December of 2002, negotiations were held between counsel for Bale Chevrolet Company and representatives of the IRS' Appellate Division office in Oklahoma City, Oklahoma, over the IRS' determination to impose the "intentional disregard" penalty of $25,000 per transaction, against Bale Chevrolet Company for that company's failure to file four (4) Forms 8300 with the IRS' Detroit, Michigan office, during the three (3) year period of 1998, 1999 and 2000.

33.    The negotiations with representatives of the IRS' Appellate Division in Oklahoma City over this disputed matter, were fruitless (as far as Bale Chevrolet Company and its counsel were concerned), since the representatives of the IRS' Appellate Division Office appeared to also apply a "strict liability" standard to the failure of Bale Chevrolet Company to timely meet the filing requirements for the filing of these Form 8300 "information returns" on the four (4) transactions questioned by the Revenue Agent.

34.    After Bale Chevrolet Company's "protest" was rejected by the IRS, Bale Chevrolet Company was sent a billing notice by the IRS for a total of $109,386.17, for the "intentional disregard" penalties, the "failure to file" penalties, and the "accrued interest" attributable to these four (4) penalty assessments, since they had been made against the company.

35.    On January 8, 2003, Bale Chevrolet Company's counsel delivered (to the Little Rock, Arkansas Cashier's Office of the IRS) Bale Chevrolet Company's Check No. 101198, drawn on the Metropolitan National Bank, in the total amount of $109,386.17.  A copy of the transmittal letter and the check making this payment by Bale Chevrolet Company is attached hereto as Exhibit A.

**CLAIM FOR REFUND TIMELY FILED BY BALE CHEVROLET COMPANY**

36.    In accordance with the statutory procedure created by Congress, Bale

Chevrolet Company filed three (3) separate Forms 8300, Claims for Refund with the IRS'
Little Rock, Arkansas office, on Monday, January 10, 2005 (for the years 1998, 1999 and
2000), making request and demand by Bale Chevrolet Company for the refund of the total
amount of $109,386.17 paid by Bale Chevrolet Company (with regard to the assessment
of the "intentional disregard penalties" and the failure to file penalties imposed upon it by the
IRS) regarding the company's failure to timely file the four (4) Forms 8300 with the Detroit,
Michigan office of the IRS during the years 1998, 1999 and 2000.

      37.    Copies of each of the three (3) "file stamped" Claims for Refund (Forms
843) filed on behalf of Bale Chevrolet Company on January 10, 2005, are attached hereto
as Exhibit B-1, B-2 and B-3.

      38.    Since neither Bale Chevrolet Company nor its counsel had been
contacted by representatives of the IRS, regarding these three (3) Claims for Refund (Forms
843), by August of 2005, counsel for Bale Chevrolet Company made contact, in writing, with
the Taxpayer Advocate for Arkansas, at her office here in Little Rock, asking for some
explanation as to the status of the review of these three (3) Claims for Refund.  As a result
of this August 2005 inquiry by Bale Chevrolet Company's counsel, it became apparent that
the IRS had lost (and could not find) the three (3) "original" Forms 843 filed by Bale
Chevrolet Company on January 10, 2005.

      39.    Photocopies of the three (3) "file stamped" Claims for Refund (Forms
843) were provided to representatives of the IRS' Taxpayer Advocate Service here in Little
Rock, Arkansas.   Thereafter, those representatives of the Taxpayer Advocate's Service
sought to have the photocopies of those three (3) Claims for Refund properly processed
by the IRS.

      40.    Photocopies of these three (3) "file stamped" Forms 843 were first sent

to the Detroit, Michigan office of the IRS that processes the Forms 8300. However, those copies of the three (3) Claims of Refund were returned to the Little Rock, Arkansas Taxpayer Advocate Service employee, with a notification that such Claims for Refund were not processed by that office.

41.   Next, the three (3) "file stamped" copies of the Claims for Refund (Forms 843) were forwarded to the Memphis, Tennessee Service Center of the IRS, by the Little Rock, Arkansas based employee of the Taxpayer Advocate Service. Again, those Forms 843 were returned to the Arkansas based Taxpayer Advocate Service's employee by representatives of the Memphis Service Center of the IRS, indicating that Forms 843 relating to penalties assessed for the "failure to timely file" Forms 8300 were not processed by the Memphis Service Center.

42.   Finally, the three (3) "file stamped" photocopies of these Claims for Refund (Forms 843) that had been filed by Bale Chevrolet Company on January 10, 2005, were forwarded by the Arkansas based employee of the Taxpayer Advocate Service to the Ogden, Utah Service Center of the IRS for processing and determination on whether or not to allow or deny these Claims for Refund, since that facility of the IRS had been designated as the only IRS facility that processed Forms 843, dealing with disputes over "intentional disregard" penalty assessments.

43.   By notice dated October 26, 2005, the Ogden Service Center of the IRS sent Bale Chevrolet Company a notification that it was disallowing the "protest" that had supposedly been filed for the company, because the "protest" did not establish that the taxpayer was not liable for the "trust fund penalty," provided by 26 U.S.C. § 6672 (where a corporate officer is assessed the "trust fund portion" of federal employment taxes withheld from an employees wages that are not paid over to the IRS).

44.    The issuance of this improper and non-responsive October 26, 2005, Notice of Protest rejection was **_not_** in any way consistent with the grounds alleged by Bale Chevrolet Company and its counsel, as the basis for the IRS to refund over $100,000 of assessed and paid "intentional disregard" penalties that had been imposed upon Bale Chevrolet Company by the IRS.

45.    Finally, by Letter-Notice dated February 8, 2006, representatives of the IRS at the Ogden Service Center issued a proper Notice of Claim Disallowance to Bale Chevrolet Company with regard to the three (3) Claims for Refund (Forms 843) that it timely filed with the IRS on January 10, 2005. A copy of this statutory Notice of Claim Disallowance (which denied Bale Chevrolet Company's Claims for Refund, and which provided for the beginning of the running of the two-year statute of limitations within which the company could file suit for refund in the United States District Court) is attached to this Complaint as Exhibit C.

### JUDICIAL ACTION IN ONLY REPORDED CASE DEALING WITH THE "INTENTIONAL DISREGARD" PENALTY IMPOSED BY 26 U.S.C. § 6721(e) AGAINST A MOTOR VEHICLE DEALER

46.    Shortly after the February 8, 2006, statutory Notice of Claim Disallowance was issued, the Honorable Walter D. Kelley, Jr., United States District Judge for the Eastern District of Virginia, rendered a bench decision in the case of Tysinger Motor Company v. United States, 428, F. Supp. 2d 480 (E.D., Va., 2006).

47.    The only issue involved in this Tysinger Motor Company case was whether or not the corporate-taxpayer, that was engaged in the business of selling motor vehicles, and which had failed (during a two-year period of time) to timely file six (6) Forms 8300 with the Detroit, Michigan office of the IRS on transaction where the dealership had

received more than $10,000 in cash or cash equivalents from its customers on the purchase of vehicles, was liable for the "intentional disregard" penalty of $25,000 on each of the six transactions.  Judge Kelley ruled adversely to the IRS' asserted position that this vehicle dealer had "intentionally disregarded" the Form 8300 filing requirement in these six (6) instances.

48.   The legal and factual positions that were reported as being asserted by the IRS in this reported case involving Tysinger Motor Company appear to be virtually the same "strict liability" standards that were asserted by the IRS in imposing these four (4) (still strenuously disputed) "intentional disregard" penalties (totaling $100,000) against Bale Chevrolet Company, for its failure to timely file the four (4) Forms 8300 in 1998, 1999 and 2000.

49.   An examination of the facts set forth in the Tysinger Motor Company opinion reflect that those facts are virtually identical to the facts presented in the Claims for Refund filed by Bale Chevrolet Company, regarding its failure to time file the four (4) Forms 8300 with the Detroit, Michigan office of the IRS, during the years 1998, 1999 and 2000.

50.   Counsel for Bale Chevrolet Company contacted the counsel who had represented Tysinger Motor Company (the motor vehicle dealer involved in the **only** reported decision regarding the IRS' attempt to impose the "intentional disregard" penalty in similar factual situations).  Counsel for Bale Chevrolet Company also contacted representatives of National Automobile Dealers Association (NADA) in Alexandria, Virginia. The individuals contacted in this manner (by the counsel for Bale Chevrolet Company) supplied counsel with the names, addresses and telephone numbers of various certified public accountants and/or attorneys who had represented motor vehicle dealers (located

14

through out the United States) before the IRS, in similar factual situations, where the IRS had proposed to assess the "intentional disregard" penalty against their motor vehicle dealer clients that had failed to file Forms 8300 with the IRS on sales where the Forms 8300 should have been filed.

51.    On knowledge and belief gained from the contacts mentioned in paragraph 50, above, the undersigned counsel for Bale Chevrolet Company asserts that the representatives of the IRS' Appellate Division office (based in Philadelphia, Pennsylvania), reached a decision (shortly after the Tysinger Motor company case was decided)  that that office of the IRS would not administratively sustain the imposition of such "Draconian" "intentional disregard" penalties in similar factual settings, but, instead that those proposals to assert the "intentional disregard" penalties would be reduced to the $50.00 per incident "negligence penalty" that is provided as an alternative to the "intentional disregard" penalty by the provisions of 26 U.S.C. § 6721(a).

52.    The Tax Division of the U.S. Department of Justice (in its representation of the IRS in the Tysinger Motor Company case) timely filed a notice of appeal on behalf of the IRS to the U.S. Court of Appeals for the Fourth Circuit, from the decision by Judge Kelley of the U.S. District Court for the Eastern District of Virginia that was adverse to the IRS's asserted positions in the Tysinger Motor Company case. However, shortly thereafter, the IRS authorized the Tax Division of the U.S. Department of Justice to withdraw and dismiss that notice of appeal.  The decision of Judge Kelley in the Tysinger Motor Company case, therefore,  became final and no longer appealable.

53.    Since the entering, on the record, of the decision in the Tysinger Motor Company case (nearly two (2) years ago), there have been absolutely no other reported decisions by *any* U. S. District Court involving the contested assessment by a motor

vehicle dealer of the IRS's assessment of the $25,000 per incident "intentional disregard" penalty for the failure of a motor vehicle dealer, located anywhere in the United States, to timely file a Form 8300 with the IRS' Detroit, Michigan office.

### SECOND REVIEW OF BALE CHEVROLET COMPANY'S CLAIMS FOR REFUND BY REPRESENTATIVES OF THE IRS' APPELLATE DIVISION

54.    While personnel of the Ogden Service Center of the IRS were processing and reviewing the three (3) Claims for Refund (Forms 843) filed by Bale Chevrolet Company, counsel for Bale Chevrolet Company suggested or requested to the coordinating representative of the IRS' Arkansas based Taxpayer Advocate Service, that a "second review" of these three (3) Claims for Refund filed by Bale Chevrolet Company be undertaken by representatives of the Appellate Division of the IRS, based upon the newly reported decision in the Tysinger Motor Company case.

55.  In response to this suggestion, counsel for Bale Chevrolet Company was informally advised (by representatives of the Little Rock, Arkansas office of the Taxpayer Advocate's Service) that the Appellate Division of the IRS had agreed to make a "second review" of the issues raised by these three (3) Claims for Refund filed by Bale Chevrolet Company, and that that "second review" would also be assigned to a "new" and "different" Appeals Officer in the Oklahoma City, Oklahoma office of the IRS (the Appellate Division office of the IRS that had "first reviewed" and "denied" the "protest" of Bale Chevrolet Company in 2002).

56.    Bale Chevrolet Company's undersigned counsel then sent a series of letters and additional supporting exhibits and documents to the "new" Appeals Officer of the IRS who had been assigned to conduct this "second review" of Bale Chevrolet Company's three (3) Claims for Refund.   These letters were dated April 21, 2006 and

August 11, 2006. Counsel for Bale Chevrolet Company never received any oral or written reply from this "new" Appeals Officer, regarding the substantive matters raised on behalf of Bale Chevrolet Company in these two letters.

57. Over a year after the undersigned counsel for Bale Chevrolet Company first wrote to this "new" Appeals Officer in the Oklahoma City, Oklahoma office of the IRS Appellate Division, Bale Chevrolet Company's counsel received a letter dated May 30, 2007 from this "new" Appeals Officer of the IRS, who had been assigned to make a "second review" of Bale Chevrolet Company's three (3) Claims for Refund. This was the only response ever sent by this IRS representative to counsel for Bale Chevrolet Company. In this May 30, 2007 letter, the "new" Appeals Officer stated that he had reviewed some of the file on this disputed matter and that he had determined that Bale Chevrolet Company had not timely filed its three (3) Claims for Refund, under the applicable statutes of limitation for the filing of Claims for Refund. Therefore, this "new" Appeals Officer asserted that Bale Chevrolet Company was barred from even arguing that it was entitled to a refund of the more than $100,000 that it had paid to the IRS in January of 2003, even if its legal theories regard the imposition of the "intentional disregard" penalties were correct.

58. By letters dated July 4, 2007 and August 16, 2007, the undersigned counsel for Bale Chevrolet Company wrote to the "new" Appeals Officer stating that the conclusion reached by the Appeals Officer (as set out in his letter of May 30, 2007), regarding the "alleged" untimeliness" of the filing of the three (3) Claims for Refund by Bale Chevrolet Company was in error, because the IRS had adopted a written interpretative policy, in 1966 (in Rev. Rul. 66-118, 1966-1 Cum. Bull. 290), that expressly stated that the IRS would take the position that Claims for Refund filed on the first day after a weekend or holiday would be considered "timely filed" by the taxpayer involved, with regard to the

17

actual filing of the Claim for Refund **_and_** the taxpayer's ability to recover the "actual amount" stated in the Claim for Refund, when the actual date that was two (2) years from the issuance of the Notice of Claim Disallowance by the IRS fell on a weekend day or holiday.

59.     However, without these representatives of the Oklahoma City, Oklahoma office of the IRS' Appellate Division making any response to the assertions of Bale Chevrolet Company's counsel's written assertions of why the three (3) Claims for Refund had been timely filed by Bale Chevrolet Company, by letter dated August 15, 2007, the Team Manager (supervisor) of the "new" Appeals Officer (to whom this "second review" of Bale Chevrolet Company's three (3) Claims for Refund had been assigned) wrote to Bale Chevrolet Company's counsel and advised him that the Appellate Division of the IRS was rejecting and denying the three (3) Claims for Refund filed by Bale Chevrolet Company, based upon the same (but erroneous) reason that had been stated in the "new" Appeals Officer's letter of May 30, 2007 to counsel for Bale Chevrolet Company.

60.     In response to this short letter of August 15, 2007 (from the "Team Manager" of the Oklahoma City, Oklahoma office of the IRS' Appellate Division), the undersigned counsel for Bale Chevrolet Company wrote a letter, dated August 20, 2007 (addressed to both the "new" Appeals Officer and his Team Manager) explaining in detail why the "procedural position" asserted in the Team Manager's letter of August 15, 2007, was in error (based upon the IRS' long published "policy" on this issue and the undisputed facts). The undersigned counsel for Bale Chevrolet also set forth in that August 20, 2007 letter to these IRS representatives a pictorial representation of the reason why their decision on the "timeliness" of these three (3) Claims for Refund was in error. This depiction is set forth below:

The following table represents the visual depiction of the undisputed facts in suit:



The total amount of $109,386.17 for the four (4) $25,000 per instance "intentional disregard penalties," plus interest, were paid by Bale Chevrolet Company on January 8, 2003. January 8, 2005 fell on a Saturday. The next business day was Monday, January 10, 2005. The three (3) Claims for Refund in question were filed by Bale Chevrolet Company's undersigned representative with representatives of the Little Rock, Arkansas office on January 10, 2005.

61. Based upon the undisputed facts (depicted in paragraph 60, above), and the IRS' published policy on this particular issue (in Rev. Rul. 66-118, supra), the undersigned counsel for Bale Chevrolet Company expressly requested that the representatives of the Oklahoma City, Oklahoma office of the IRS' Appellate Division withdraw the decision set forth in the Team Manager's letter of August 15, 2007, and, instead, reopen the "second review" of these three (3) Claims for Refund filed by Bale Chevrolet Company, so as to consider and rule upon the "substantive issues" raised in those Claims for Refund and the numerous letter-briefs subsequently submitted to representatives of the IRS' Appellate Division by the undersigned counsel for Bale Chevrolet Company.

62. After there was no response from representatives of the IRS' Oklahoma City, Oklahoma office of the Appellate Division (to the August 20, 2007 letter of

undersigned counsel requesting withdrawal by the IRS of the decision to reject the three (3) Claims for Refund filed by Bale Chevrolet Company) the undersigned counsel for Bale Chevrolet Company wrote (on August 22, 2007)  to the Area Director of the Appellate Division of the IRS (for Area 7, West) in Houston, Texas (the office that supervises the Oklahoma City, Oklahoma office of the IRS' Appellate Division).  The undersigned counsel pointed out to the Area Director of the IRS' Appellate Division the "erroneousness" of the decision by the Appellate Division's Oklahoma City, Oklahoma office to deny Bale Chevrolet Company's Claims for Refund on the asserted "procedural grounds."  Bale Chevrolet Company's counsel then requested that the Area Director personally intercede and look into the merits of this request to reopen.  Later, in September of 2007, counsel for Bale Chevrolet Company telephoned and spoke with this Area Director, in person, to urge some action on the written request to re-open the "second review" of these Claims for Refund on a "substantive basis."

64. 63.  Based upon the past history of his dealings (on two occasions, first in 2002, and later in 2006-2007) with representatives of the Appellate Division's Oklahoma City, Oklahoma office on this Bale Chevrolet Company matter, the undersigned counsel for Bale Chevrolet Company expressly requested that a reopening of the matter and a "second review" of these three Claims for Refund be undertaken by the personnel of the Area Director's office, or the personnel of another office of the Appellate Division within Area 7 west (besides the Oklahoma City, Oklahoma office of the IRS' Appellate Division).

64.  The undersigned counsel for Bale Chevrolet Company received a "voice mail" message on his telephone, early on the morning of September 21, 2007, that had been left by the Team Manager of the Oklahoma City, Oklahoma office of the IRS' Appellate Division (who was then in the office of the Area Director of the Appellate Division

20

in Houston, Texas).  This "voice mail" message stated that it had been decided that the three (3) Claims for Refund filed by Bale Chevrolet would be "taken back into the inventory" of the Oklahoma City, Oklahoma Appellate Division office, and that the "second review" of the issues raised by counsel for Bale Chevrolet Company would again be reassigned to the "new" Appeals Officer who had the "second review" assigned to him for at least 18 months, before he rejected these Claims for Refund on "erroneous" procedural grounds.

65.  Subsequently, by letter dated September 21, 2007, the undersigned counsel for Bale Chevrolet Company again wrote to the Area Director of the Area 7 West of the IRS' Appellate Division in Houston, Texas, to acknowledge that he had been informed by the Oklahoma City, Oklahoma Team Manager of the IRS' Appellate Division that the three (3) Claims for Refund of Bale Chevrolet Company would be taken back into the inventory of that office and re-assigned to the same "new" Appeals Officer who had recently recommended rejection of these Claims for Refund on "erroneous" procedural grounds.  The undersigned counsel again requested that this "second review" of these Claims for Refund be assigned to any office of the Appellate Division's Area 7 West, but *not* the Oklahoma City, Oklahoma office of the IRS' Appellate Division, because of the bad experiences that result "twice before" in this matter at the administrative level, within the IRS' Appellate Division office in Oklahoma City, Oklahoma. Several weeks later, counsel for Bale Chevrolet Company received a telephone call from a female management representative of the IRS' Appellate Division in Dallas, Texas, who stated that the counsel's request to have the "second review" of these Claims for Refund  transferred from the Oklahoma City, Oklahoma office of the Appellate Division would *not* be granted.  This management representative of the IRS refused to put that decision in writing, pursuant to the request of the counsel for Bale Chevrolet Company.

66.    Since September 21, 2007, there has been absolutely no written or telephonic communications initiated by any representative of the IRS' Oklahoma City, Oklahoma office of the Appellate Division to counsel for Bale Chevrolet Company about the status of the "second review of these three (3) Claims for refund, even though counsel for Bale Chevrolet Company wrote to the Team Manager of the IRS' Appellate Division about the status of that office's "second review" of these three (3) Claims for Refund by letters dated October 26, 2007 and December 26, 2007. In his December 26, 2007 letter, the undersigned counsel for Bale Chevrolet Company stated, in the closing paragraphs of this letter, as follows:

> I cannot, in good faith, allow the two-year period of time within which a Complaint must be prepared and filed on behalf of Bale Chevrolet Company in the U. S. District Court for the Eastern District of Arkansas to seek an "objective" judicial review of the disputed matters involved in and raised by these three (3) Claims for Refund filed by Bale Chevrolet Company, to near expiration (waiting on some action on these three (3) Claims for Refund by your office of the IRS' Appellate Division). I will be out of the United States from January 19, 2008 through February 8, 2008, so that this Complaint will have to be filed prior to my departure, i.e., during the week of January 14, 2008.

> Therefore, unless your office of the Appellate Division of the IRS is able to notify the undersigned, in writing, by January 11, 2008:  (1) that these Claims for Refund will be allowed, in full; or (2) that these three (3) Claims for Refund will **not** be allowed; or (3) that the IRS agrees to enter into an Agreement to Extend Time to Bring Suit (Form 907), then I must move forward with my co-counsel, John Earl, to prepare the Complaint to initiate a suit for refund on behalf of Bale Chevrolet Company in the U. S. District Court for the Eastern District of Arkansas, regarding the factual and legal issues raised in these three (3) Claims for Refund.

> The courtesy of your consideration and response to these inquiries, in a timely fashion, will be greatly appreciated. Mr. Earl and I need a response from you to these inquiries, so that we will be able to advise John Bale on what actions we believe he should authorize us to take in the best interest of his motor vehicle dealership in this disputed matter.

67.    As of the close of business on January 18, 2008, no telephonic or written reply had been received by any representative of the IRS with regard to the three (3) specific options set forth in the December 26, 2007 letter of Bale Chevrolet Company's counsel to this Oklahoma City, Oklahoma Team Manager of the IRS' Appellate Division, who is allegedly in charge of that office and the IRS' "second review" of Bale Chevrolet Company's three (3) Claims for Refund.

### COUNT I

68.    Each and every allegation contained in paragraphs 1-67 of this Complaint are incorporated herein in their entirety, as if restated word for word.

69.    Bale Chevrolet Company did not, during the years 1998, 1999 and 2000, act, in any way, with "intentional disregard" of the requirements and obligations imposed upon the company (as a motor vehicle dealer) to file Forms 8300 with the Detroit, Michigan office of the IRS (whenever Bale Chevrolet Company sold a vehicle and the customer paid the company more than $10,000 in cash or cash equivalents, as part or all of the consideration for the purchase of the vehicle).

70.    The assessment of four (4) $25,000 "intentional disregard" penalties by the IRS against Bale Chevrolet Company (which penalties are authorized by the provisions of 26 U.S.C. §6721(e)), because of Bale Chevrolet Company's failure to timely file Forms 8300 with the IRS on *only* four (4) sales transactions (out of thousands of sales transactions in which Bale Chevrolet Company was involved with its customers, during the years 1998,1999 and 2000), where Bale Chevrolet Company received more than $10,000 in consideration for the purchase of a vehicle in the form of cash or cash equivalents, was an action on the part of the IRS and its employees that was arbitrary, capricious, erroneous and illegal.

71.  The actions taken by the IRS representatives in the assessment of over $100,000 of (strongly contested and disputed) "intentional disregard" penalties against Bale Chevrolet Company (based upon the undisputed and applicable facts comprising the four (4) transaction involving Bale Chevrolet Company and its customers during 1998, 1999 and 2000) represents the imposition of these "Draconian" monetary penalties upon a vehicle dealer involved in a normal sales transaction of a motor vehicle.  None of these four (4) questioned transactions were of the type of sales transactions that Congress intended to have these huge financial penalties imposed (when the "intentional disregard" penalties (for the failure of a business to file a required "information return" (Form 8300) with the IRS) were enacted, as part of TEFRA, in 1982).

72.  At the very most, the facts and circumstances surrounding each of the four (4) questioned sales transactions between Bale Chevrolet Company and its customers (where Bale Chevrolet Company received more than $10,000 in cash or cash equivalents from the customer), during 1998, 1999 and 2000, with regard to the failure of Bale Chevrolet Company to timely file the required Forms 8300 on these transactions with the Detroit, Michigan office of the IRS, would support no more than the imposition of the $50.00 per transaction "negligence penalty" that Congress has created as an alternative for the IRS to impose on vehicle dealers who fail to timely file Forms 8300, when the occasion arises.

73.  The counsel for the corporate taxpayer-Plaintiff in this civil action asserts that:

> (1)    since Bale Chevrolet Company did have a system in place to meet the filing requirements of Forms 8300 (during the years 1998, 1999 and 2000);

> (2)    since the auditing Revenue Agent of the IRS has acknowledged and admitted that Bale Chevrolet

24

Company did correctly and properly file many Forms 8300 with the Detroit, Michigan office of the IRS on sales transactions where the company received more than $10,000 in cash or cash equivalents from its customers (during the years 1998, 1999 and 2000);

(3)     since none of the customers purchasing the vehicles in the four (4) questioned transactions appear to have been drug dealers, or similar criminals trying to avoid the disclosure of their purchases (especially since two of these customers actually signed the Forms 8300 prepared by the employees of Bale Chevrolet Company on those transactions involving payment of more than $10,000 in cash or cash equivalents); and

(4)     since Bale Chevrolet (out of an abundance of caution) filed Forms 8300 with the Detroit, Michigan office of the IRS that involved cash transactions that Bale Chevrolet Company believed should be reported to the IRS (even though the IRS personnel in that Detroit, Michigan office later returned these Forms 8300 and told Bale Chevrolet Company **not** to file such Forms 8300 under those circumstances (during the years 1998, 1999 and 2000)).

Bale Chevrolet Company asserts and alleges that it has clearly established that the auditing personnel of the IRS, and the reviewing personnel of the IRS' Appellate Division, wrongfully, erroneously and without any factual basis to support their action and determinations, appear to have tried to hold Bale Chevrolet to a "strict liability" standard for the failure to timely file Forms 8300 on sales transactions where the vehicle dealer was involved in any sales transaction of a vehicle, where the dealer received more than $10,000 in cash or cash equivalents, as part of the consideration of the sale of the vehicle.

74.     Because Bale Chevrolet Company did **not**, in any way, deliberately conspire with its four (4) customers (involved in the questioned transactions) to **not** timely file the required Forms 8300 on those four (4) transactions, Bale Chevrolet Company's counsel assert that his corporate client's employees did **not** undertake any actions,

whatsoever, that would establish that they "intentionally disregarded" the requirement of the filing of Forms 8300 with the Detroit, Michigan office of the IRS on these four (4) questioned transactions. Because the IRS cannot sustain its burden in this case (as it failed to carry the same burden in the Tysinger Motor Company case) that Bale Chevrolet "intentionally disregarded" the requirement of filing the "information returns" (Forms 8300) in these four (4) questioned transactions (during the years 1998, 1999 and 2000), the counsel for this corporate taxpayer asserts that Bale Chevrolet Company is entitled to receive a Judgment from this Court (either by way of Summary Judgment or after a trial of the issues in question) that will require the IRS to refund to this company **all** of the monies that it paid to the IRS in the form of "intentional disregard" penalties (in January of 2003), plus assessed and accrued interest, all as provided by law.

### COUNT II

75.   Each and every allegation contained in paragraphs 1-74 of this Complaint are incorporated herein in their entirety, as if restated word for word.

76.   Since there has been no reported decision of **any** United States District Court, involving a motor vehicle dealer and its challenge to the imposition of the $25,000 per transaction "intentional disregard" penalty (since the decision was rendered by Judge Kelley in the Tysinger Motor Company case, which decision was totally adverse to the factual and legal positions asserted by the IRS in the federal taxing agency's failure to try and sustain its challenged assessments of the "intentional disregard" penalties against that motor vehicle dealer).

77.   The counsel for Bale Chevrolet Company asserts (based upon knowledge and believe, after conducting a "due diligence" investigation with the representatives of other motor vehicle dealers against which the IRS has proposed to

assess the "intentional disregard" penalty, under similar factual circumstances to those presented by Bale Chevrolet Company in this civil action), that the IRS has stopped trying to impose these "intentional disregard" penalties against motor vehicle dealers in similar factual circumstances (especially because of the alleged actions and determinations undertaken by the personnel of the IRS' Philadelphia, Pennsylvania Appellate Division office, to no longer sustain these "intentional disregard" penalties (in similar factual situations) after the decision was rendered by Judge Kelley in the Tysinger Motor Company case).

78.   Because of the situation now existing:

(1)   the IRS is no longer attempting to impose the "intentional disregard" penalty against motor vehicle dealers in factual circumstances similar to those involved in this civil proceeding;

(2)   the IRS appears to have "given up on" its attempt to impose the $25,000 per transaction "intentional disregard" penalty on a "strict liability basis" (for any motor vehicle dealer who has previously been audited for its Form 8300 filing compliance record); and

(3)   especially since it appears based upon the arbitrary, erroneous and totally unprofessional action of the personnel of the IRS' Appellate Division office in Oklahoma City, Oklahoma in refusing (over a period of nearly two (2) years) to give "substantive consideration" in its supposed "second review" of the issues raised by Bale Chevrolet Company in support of its three (3) Claims for Refund.

Then the undersigned counsel for Bale Chevrolet Company alleges that Bale Chevrolet Company has been denied its rights to enjoy "the equal protection of the laws," as set forth in the U. S. Constitution.  Therefore, the IRS should be liable to Bale Chevrolet Company for any and all damages (including any damage to the company's business reputation) that this company may have suffered because of these unconstitutional actions by the IRS and its employees.

COUNT III

79.     Each and every allegation contained in paragraphs 1-78 of this Complaint are incorporated herein in their entirety, as if restated word for word.

80.     The handling by the representatives and personnel of the Internal Revenue Service involved in this investigation, the assessment, and the administrative review of the "Protest" and the Claims for Refund filed by Bale Chevrolet Company, these IRS representatives did **not** adhere to the normal standards and requirements established by the Internal Revenue Service for providing some "minimum" due process rights for taxpayers against whom the Internal Revenue Service has proposed to make assessments, including the assessments of the "intentional disregard" penalties, which are in question in this civil action.

81.     These irregularities on the part of the Internal Revenue Service's employees and representatives involved in the assessment of, and revi ew of, the "intentional disregard" penalties imposed by the IRS upon Bale Chevrolet Company have been set forth in detail in the statement of facts portion of this Complaint.  The undersigned counsel for Bale Chevrolet Company does not believe that such irregularities and questionable actions by its employees will be denied the IRS in response to this Complaint.

82.   The continual mishandling (by the representatives and personnel of the Internal Revenue Service) of Bale Chevrolet Company's due process rights, during the periods involving the investigation, assessment and administrative review of the Claims for Refund filed by Bale Chevrolet Company (with regard to these still contested "intentional disregard" penalties) will establish, to this Court's satisfaction, that Bale Chevrolet Company has been treated unfairly and inequitably by the IRS and its employees throughout the nearly seven (7) year period that Bale Chevrolet Company has been

challenging the IRS' erroneous and illegal imposition of these "intentional disregard" penalties and the arbitrary and capricious disallowance of its Claims for Refund (involving the $100,000 in such "intentional disregard" penalties that the company was erroneously and illegal forced to pay to the IRS in January of 2003).

83. Bale Chevrolet Company, as the Plaintiff in this refund action, asserts that it will be the prevailing party in this "tax refund suit." As the "prevailing party," Bale Chevrolet Company asserts that it will be entitled to recover from the United States, in this proceeding (pursuant to the provisions of 26 U.S.C. § 7430), *all* of the litigating costs that it has been forced and required to incur (including a reasonable attorneys fee and all costs advanced) in protecting itself (against these wrongful, erroneous and illegal assessments by the Internal Revenue Service) in the exercise of its due process rights in protesting and contesting the arbitrary, capricious, erroneous and illegal assessment of these challenged "intentional disregard" penalties that have been imposed upon it by the Internal Revenue Service.

84. Bale Chevrolet Company alleges that this Court will hold (at the conclusion of these proceedings) that the positions asserted, adopted and carried out by the Internal Revenue Service and its various employees (in imposing these still contested "intentional disregard" penalty assessments, and in denying its three (3) Claims for Refund) were actions that were *not* "substantially justified," under both the applicable facts and the applicable statutes involved in this litigation.

85. Therefore, Bale Chevrolet Company asserts that, at the conclusion of this suit for refund, this Court must find that it is the "prevailing party" in this proceeding, against the United States (i.e. the Internal Revenue Service), and that Bale Chevrolet Company is entitled to recover (from the Internal Revenue Service) *all* of its litigating costs

29

that it has necessarily incurred (including such litigating costs it has incurred at the administrative level and in this Federal Court proceeding).  The positions asserted by the Internal Revenue Service in support of its assessments of these four (4) "intentional disregard" penalties against Bale Chevrolet Company, and in denying Bale Chevrolet Company's three (3) Claims for Refund, were "not substantially justified" (especially as those terms have been interpreted in the **_only_** precedential decision rendered in the Tysinger Motor Company case in this area of the law by **_any_** United States District Court. That decision in the Tysinger Motor Company case, involving virtually identical facts to those presented by Bale Chevrolet Company in this civil proceeding (where the motor vehicle dealer successfully contested to the IRS' assessments of the same "intentional disregard" penalties) and where the IRS dismissed its appeal in that case to the Federal Appellate Court, means that the **_only_** reported decision on this issue presented in this civil proceeding is totally favorable to the positions asserted by Bale Chevrolet Company, and totally adverse to the positions asserted by the IRS.

**WHEREFORE**, Bale Chevrolet Company, as the Plaintiff,  prays that this Court will hear the causes of action asserted by it in this Complaint, and, after considering the positions of both parties hereto, that this Honorable Court will enter an Opinion and Judgment in this action:

> (1)    that determines that Bale Chevrolet Company did **_not_** "intentionally disregard" its obligation to file the four (4) Forms 8300 for the sales transactions in 1998, 1999 and 2000 that were questioned by the IRS;

> (2)    that Bale Chevrolet Company, as the Plaintiff,  is entitled to recover, by way of the Judgment of this Court, all of the monies that it was forced to pay to the Internal Revenue Service in January of 2003, because of the four (4) separate "intentional disregard" penalties that the IRS assessed against the company for the four

       (4) sales transactions that occurred in 1998, 1999 and 2000;

(3)     that Bale Chevrolet Company, as the Plaintiff, is entitled to have this Court enter a Judgment that orders the Internal Revenue Service to pay the Plaintiff amounts equal to any and all monetary damages that the company may have suffered, because of the IRS' unconstitutional administration of the "intentional disregard" penalties provided by 26 U.S.C. §6721(e);

(4)     that Bale Chevrolet Company, as the Plaintiff, is entitled to be awarded, by this Court, and against the United States (i.e. the Internal Revenue Service), all of its litigating costs incurred by it in exercising its constitutional rights of due process to oppose and contest the Internal Revenue Service's assessment against it of these contested "intentional disregard" penalties, including the award of reasonable attorneys fees and all amounts advanced as costs on behalf of the Plaintiff, because (a) Bale Chevrolet Company will be determined to be the "prevailing" party in this litigation, and (b) the positions asserted by the Internal Revenue Service in support of its arbitrary, capricious and illegal assessments of these contested "intentional disregard" penalties (in this disputed matter) were not substantially justified; and

(5)     that this Court will award Bale Chevrolet Company, as the Plaintiff, any and all other relief to which this Court may find that the Plaintiff is entitled, in either law or equity.

Respectfully submitted,

Mr. John C. Earl
Attorney at Law
Tower Building, Suite 1300
323 Center Street
Little Rock, AR 72201

/s/ Eugene G. Sayre
Bar Number 75111
Jack, Nelson, Jones, Fink,
        Jiles & Gregory, P.A.
425 W. Capitol Avenue, Suite 3400
Little Rock, AR 72201
Telephone: (501) 375-1122
Fax:        (501) 375-1027
E-mail: esayre@jlj.com

**ATTORNEYS FOR PLAINTIFF**