Re:   **Bale Chevrolet Company v. United States**
**U. S. D. C., E. D. Ark., Western Division**
**Docket No.**

# COMPLAINT

# EXHIBIT A

JACK, LYON & JONES, P.A.

ATTORNEYS AT LAW
3400 TCBY TOWER
425 WEST CAPITOL
LITTLE ROCK, ARKANSAS 72201
(501) 375-1122
Facsimile: (501) 375-1027

Offices In:
Conway, Arkansas
Nashville, Tennessee

e-mail: eqs@jlj.com
Direct dial no.: (501) 707-5523

January 8, 2003

Mr. Randall Haynes
Territory Manager, Area 6
SB/SE Division
Internal Revenue Service
700 West Capitol Avenue
Little Rock, AR 72201

**HAND DELIVERED**

INTERNAL REVENUE SERVICE
Received with Remittance

JAN 08  2003

DISTRICT DIRECTOR
Arkansas-Oklahoma District #73-005

Re:   Bale Chevrolet, Inc.
      Form 8300 Penalties
      1998-1999-2000
      EIN 71-0009350

Dear Mr. Haynes:

Along with John C. Earl, I represent Bale Chevrolet, Inc. of Little Rock, Arkansas in a disputed assessment of civil penalties by the IRS, under the provisions of 26 U.S.C. §§ 6721 and 6722, for the years 1998, 1999 and 2000.  These assessments were made by the IRS, while we were in the process of "protesting" the disputed matters to the Appellate Division. However, a "freeze code" was placed on the accounts, while we "protested" these assessments to the Appellate Division. A copy of the Power of Attorney, Form 2848, that has been executed in our favor by authorized representatives of Bale Chevrolet, Inc. is also enclosed for your files and information.

Recently, we determined that a mutually satisfactory settlement could not be achieved with the Appellate Division and that office of the IRS has closed out its files in this matter.  Therefore, the Austin, Texas Service Center of the IRS has begun to send out notices and demands for payment on these three accounts. However, our corporate client has received the "billing notice" only for the penalties assessed for the year 1999, and no "billing notices" have been received by our corporate client from the IRS for the penalties assessed for the years 1998 or 2000.  However, Mrs. Amy Shrum, the Comptroller of our corporate client, has ascertained from inquiries to the IRS, that the assessments for the other two years have been made and that "billing notices" have supposedly been sent by the Austin Service Center on those two years also (though no "billing notices" have been received by representatives of our corporate client).

From inquires to the IRS, it is our understanding that the "billing notices" of the IRS for the penalties for these three (3) years are currently, as follows:

| Year | Amount Assessed |
|------|-----------------|
| 1998 | $ 27,375.01 |
| 1999 | 54,636.15 |
| 2000 | 27,375.01 |
| Total | $109,386.17 |

Accordingly, we have enclosed, as full payment of the still disputed assessments of Form 8300 penalties, Bale Chevrolet, Inc.'s check no. 101198 drawn on the Metropolitan Nation Bank in the total amount of $109,386.17. This check is tendered, today, as full payment of the outstanding assessments of the civil penalties for all three years, as listed above. Please accept this tendered payment and apply the amounts to each of the years, as set out above. We will be preparing Claims for Refund (Forms 843) for these amounts for each year, as the jurisdictional basis for carrying this disputed matter to the United States District Court for any objective review of the facts and law that are in dispute.

Your cooperation and assistance in getting these payments accepted and properly credited by the IRS will be greatly appreciated. Please contact me if you experience any problems in applying this payment as directed.

Sincerely,

Eugene G. Sayre

EGS:

cc: Mr. John H. Bale
Ms. Amy Shrum
Mr. John C. Earl
Mr. Bob Ferguson

| IOL NO. | INVOICE DATE | PURCHASE ORDER NO. | COMMENT DOC. | AMOUNT | DISCOUNT/DISCOUNT NO. | NET AMOUNT |
|---|---|---|---|---|---|---|
| 101198 | | | | | | 109,386.17 |
| | 010703 | EIN #710009350 CIVPEN - 1998 - $27375.01 1999 - $54636.15; 2000 - $27375.01 | | | | |
| | | | | 101198 8300 | 20200 27401 | 109,386.17 109,386.17 |

CHEVROLET

Notice Number: CP 504
Notice Date: 12-30-2002

8

write on your check:

| CIVPEN | 12-31-1999 | 71-0009350 |

Amount Due:
$54,636.15

Internal Revenue Service
MEMPHIS, TN 37501-0030

BALE CHEVROLET
13101 CHENAL PKWY
LITTLE ROCK AR 72211-5215013

10009350 RP BALE 13 2 199912 670 00005463615

---

THE BACK OF THIS CHECK CONTAINS AN ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW

**Bale**
CHEVROLET
THE *heart* OF LITTLE ROCK

13101 Chenal Parkway
P.O. Box 22070
Little Rock, Arkansas 72211
(501) 221-9191
State WATS 1-800-489-BALE (2253)

Metropolitan National Bank
P.O. Box 8010
Little Rock, AR 72203

**101198**
101198  81-124/820

DATE
07JAN03

PAY THIS AMOUNT
*****109,386 | DOLLARS | 17 | CENTS

AMOUNT OF CHECK
****109,386.17

BALE CHEVROLET
VOID AFTER 90 DAYS

AUTHORIZED SIGNATURE

TO THE ORDER OF
INTERNAL REVENUE SERVICE

⑆101198⑆ ⑉082001247⑈ 020519 2⑈

Re:   **<u>Bale Chevrolet Company v. United States</u>**
      **U. S. D. C., E. D. Ark., Western Division**
      **Docket No.**

# COMPLAINT

# EXHIBIT B-1

| Form **843**<br>(Rev. November 2002)<br>Department of the Treasury<br>Internal Revenue Service | **Claim for Refund and Request for Abatement**<br><br>▶ **See separate instructions.** | OMB No. 1545-0024 |
|---|---|---|

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.*

**Do not** *use Form 843 if your claim is for—*
- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

| Name of claimant<br>Bale Chevrolet, Inc. | Your SSN or ITIN |
|---|---|
| Address (number, street, and room or suite no.)<br>13101 Chenal Parkway | Spouse's SSN or ITIN |
| City or town, state, and ZIP code<br>Little Rock, AR  72211 | Employer identification number (EIN)<br>71 : 0009350 |
| Name and address shown on return if different from above | Daytime telephone number<br>(    ) |

| **1** Period. Prepare a separate Form 843 for each tax period<br>From 1 / 1 / 98   to   12 / 31 / 98 | **2** Amount to be refunded or abated<br>$27,375.01* |
|---|---|

**3a** Type of tax, penalty, or addition to tax:
☐ Employment  ☐ Estate  ☐ Gift  ☐ Excise (see instructions)
☒ Penalty—IRC section ▶ _6721 & 6722_

**b** Type of return filed (see instructions):
☐ 706  ☐ 709  ☐ 940  ☐ 941  ☐ 943  ☐ 945  ☐ 990-PF  ☐ 4720  ☒ Other (specify) Form 8300

**4a** Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶

**5  Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

(See Attachment)

RECEIVED
W&I-Field Assistance

JAN 1 0 2005

AREA 3, TERRITORY 5, GRP 97
INTERNAL REVENUE SERVICE
LITTLE ROCK, AR

\* Plus interest, fees, or other awards as may be allowed by law.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

| Signature (Title, if applicable. Claims by corporations must be signed by an officer.) | Date 1-10-05 |
|---|---|
| Signature | Date |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.   Cat. No. 10180R   Form **843** (Rev. 11-2002)

## ATTACHMENT TO CLAIMS FOR REFUND - FORM 843

RE:   **Bale Chevrolet, Inc.**
       **Forms 8300 Penalties**
       **1998-1999-2000**

## A STATEMENT OF FACTS

**1. General Corporate Business.** Bale Chevrolet, Inc. is a corporation that was formed in 1923 under the laws of the State of Arkansas. Since 1923, this company has continually been engaged in the business of operating a new and used automobile and truck dealership franchised with General Motors for its Chevrolet Division.   The corporation's principal place of business is now located at 13101 Chenal Parkway, Little Rock, Arkansas 72201.

This company has always been a closely held corporation by members of the Bale family. The President and principal owner of Bale Chevrolet, Inc. is now John H. Bale of Little Rock, Arkansas.  Mr. Bale has had a lifelong relationship with this family owned dealership.  Mr. Bale participates in a number of civic and charitable activities in the State of Arkansas, including sitting on the Board of Trustees of the Arkansas Childrens' Hospital.

Bale Chevrolet, Inc. is a high volume dealership, where more than 2,500 new automobiles and trucks are sold each year, as well as a large number of used automobiles and trucks.  Since the federal law was enacted wherein businesses selling automobiles are required to file Forms 8300, Report of Cash Payments over $10,000 Received in the Trade of Business, Bale Chevrolet, Inc. has endeavored, in good faith, to comply with all of the provisions of this federal tax law in all respects.

**2. Compliance Record.** Bale Chevrolet, Inc. has been audited on three occasions by representatives of the Internal Revenue Service concerning compliance with the provisions of 26 U.S.C. § 6050I requiring the filing of Forms 8300 with the Internal Revenue Service on cash transactions or cash equivalents  of $10,000 or more.

**(a)  First Audit.**  The first audit by the IRS, in the early 1990s, did not raise <u>any</u> questions or find any errors with regard to the filing of Forms 8300 by the company.

**(b)   Second Audit.**  In 1996, Revenue Agent Brian Miller conducted an audit of Bale Chevrolet, Inc.'s compliance with the provisions of 26 U.S.C. § 6050I and determined that one Form 8300 had not been timely filed by the company with the IRS concerning a transaction involving $10,000 or more.  Such Form 8300 was prepared and filed, and no action was taken by the IRS concerning the proposed imposition of any penalties against the corporation for this one failure.

**(c)  Third Audit**.  In 2000, Revenue Agent Brian Miller again conducted an audit of Bale Chevrolet, Inc.'s compliance with the provisions of 26 U.S.C. § 6050I for the years 1998, 1999 and 2000 (in which years a total of more than 7,000 new automobiles

and trucks were sold by the dealership).  There were four separate sales transactions for which Forms 8300 were not timely filed with the IRS (though, in three of these four instances, Forms 8300 were completed, and in two instances the Forms 8300 were acknowledged and signed by the customers, but the IRS has no record of such Forms 8300 being filed with the IRS).  As with the prior 1996 audit, there was one instance, during the years 1998, 1999 and 2000, where Bale Chevrolet, Inc. should have, but did not, timely prepare or file a Form 8300 on a transaction involving $10,000 in cash or cash equivalents. In all four of these instances, this corporate taxpayer prepared Forms 8300 and such forms were immediately filed with the IRS for these four transactions and separate written notifications have been sent to the four individuals involved in the purchase of new automobiles or trucks involving cash or cash equivalent transactions of $10,000 or more, that have been questioned by Revenue Agent Miller.

However, as a result of the "third audit," Revenue Agent Miller, to the total disbelief of the representatives and owners of Bale Chevrolet, Inc.,  proposed the assessment of very large penalties (totaling $100,200), pursuant to the provisions of 26 U.S.C. §§ 6721 and 6722, Revenue Agent Miller proposed the assessment of these penalties, under the provisions of 26 U.S.C. § 6721(e) in the amount of $25,000 per transaction (rather than the $50.00 per transaction provided by 26 U.S.C. § 6721(a)), because Revenue Agent Miller alleged that the failure of Bale Chevrolet, Inc. to timely file the four Forms 8300 were "intentional" failures.    This characterization of "intentional" disregard of the provisions of the applicable statute and regulations was "protested" by Bale Chevrolet, Inc. to the Appellate Division of the Internal Revenue Service, where the proposed assessments were erroneously sustained.

**3. Compliance Procedures.**  Bale Chevrolet, Inc. has established a system for attempting to assure 100% compliance with the requirements that Forms 8300 be filed, as required by 26 U.S.C. § 6050I, in any instance in which a cash or cash equivalent payment of $10,000 or more is involved.  In fact, Bale Chevrolet, Inc., during the years 1998, 1999 and 2000, filed a large number of Forms 8300 with the Internal Revenue Service, as required by the applicable statute.  On several occasions, where the IRS had changed the Form (which Forms 8300 had not been either secured or made available to our corporate client), the completed Forms were returned to Bale Chevrolet, Inc. by the IRS for resubmission on "new" Forms 8300 by the Detroit, Michigan office of the IRS, where these Forms 8300 are directed to be filed.

Also, there are several instances where Bale Chevrolet, Inc. filed Forms 8300 with the IRS, during the three years 1998 through 2000, where the representatives of the IRS determined that there was no need, pursuant to the provisions of the applicable statutes and regulations, for this corporate taxpayer to have filed such Forms 8300. However, this corporate taxpayer submits that its "good faith" attempts to comply with the statutory requirement for the filing of such information forms with the IRS is exemplified by its filing of Forms 8300 on cash transactions, on several occasions during this three year audit period, where such Forms 8300 were determined by the IRS not to be needed.

The number of sales transactions made by Bale Chevrolet each year,  that

involve the filing of Forms 8300, are very few in number, approaching a de minimis number, when compared with the large number of sales of units of new automobiles and trucks sold by the dealership. In fact, with more than 98 or 99% of all sales transactions being conducted by Bale Chevrolet, Inc. are made by check or financing, where probably well less than one (1%) of all of the sales transactions conducted by this corporate taxpayer involve even a substantial amount of cash (e.g. several thousand dollars, as a down payment on a new vehicle, etc.).

The company's employee handbook attempted to inform each employee that there is a need to notify the appropriate company employee, whenever a cash transaction involves $10,000 or more. The initial employee required to search for transactions that would require filing of Forms 8300 was the Manager of the Finance and Insurance Department, through whom all new vehicle contracts are routed. This employee's primary duties were the securing of financing and insurance on the sale of vehicles, where it is needed. However, this employee, Mary Alexander, noted when a Form 8300 should be prepared by the company. Such notation was placed in the sheath of paperwork on the sales transaction and the "paperwork" was sent to one of approximately 3 to 5 clerical employees in the business office of the dealership to complete all of the necessary forms, including the Form 8300, when required. The completed Form 8300 was included in the file of "paperwork" (which also includes all of the other documentation normally associated with the sale of a vehicle), so that the completed Form 8300 was then presented to the Office Manager. It was, and is, the responsibility of the Office Manager to check to see that the Form 8300 is mailed to the IRS office in Detroit, Michigan.

Shortly after the 1996 audit by the Internal Revenue Service, the Accounting Manager left the employ of Bale Chevrolet, Inc.. Thereupon, the former Office Manager, Amy Shrum, was promoted to the position of Accounting Manager and a new Office Manager was named. As with other similar businesses (i.e. banks, insurance companies, etc.), there is a fairly high turnover in the employees in the business offices of automobile dealerships. Bale Chevrolet, Inc. is no exception. Thus, from 1996 through 2000, there was a complete turnover in the employees who actually processed all the "paperwork" associated with purchase and financing of the sale of new automobiles and trucks by the dealership. Also, the Office Manager's position at Bale Chevrolet, Inc. has been held by at least two different persons, since the IRS' 1996 compliance audit of the company on its filing of Forms 8300. Besides looking for cash transactions that require the preparation and filing of Forms 8300, these business office personnel must also prepare all documents that are necessary for financing with GMAC, the notations for state sales tax purposes and all other aspects of the financial side of the dealership's business.

Since the third IRS audit was performed, Ms. Shrum has worked with the dealership's current Office Manager and the Finance and Insurance Manager to create even additional and more stringent procedures and documents in an attempt to make sure that the company, in "good faith," can comply with the requirements of filing Forms 8300, as is required by the provisions of 26 U.S.C. §6050I. A bright green sheet was created by Ms. Shrum (after the third IRS audit was completed) for use in all transactions involving Forms 8300. These bright green forms were also placed prominently in each cubicle of

an employee of the business office, in an attempt to remind each of those employees to make sure they check each transaction to ascertain if a Form 8300 should be filed, when necessary. As noted above, the requirement of preparing and filing a Form 8300 on a sales transaction conducted by Bale Chevrolet, Inc. occurs in probably less than .01% of the sales transactions entered into by the dealership in any one year.

The Congress enacted 26 U.S.C. §§ 6051I, 662 and 6627 to assist in the control of "money laundering," especially by individuals engaged in the illegal drug trade (not as a "bureacratic requirement" to test honest businessmen). John Bale has, for many years, had a mandatory drug testing and screening program for all company employees. Mr. Bale has set a high standard for his employees in this regard. In fact, Bale Chevrolet, Inc. has lost several high solume salesmen, because Mr. Bale will not tolerate the use of illegal drugs by those employed by Bale Chevrolet, Inc. Mr. Bale has worked closely with the Little Rock Police Department and the Pulaski County Sheriff's Office in these anti-drug programs. This fact should be considered, in assessing the finding of the representatives of the IRS' Examination Division and Appellate Division that Bale Chevrolet, Inc. "intentionally" disregarded the requirement for filing Forms 8300 during the years 1998-2000.

## ARGUMENT

This corporate taxpayer disagrees with the IRS representative's factual determination that the Company's failure to timely file the four Forms 8300 during this three year period of time was "intentional." Such determination was, in fact, rebutted by the fact that three of the four questioned transactions had Forms 8300 prepared for them by the dealership's employees, and, in two instances, the dealership's employees required the customers to even sign and acknowledge the preparation of the Forms 8300. Rather than any type of "intentional" disregard of the obligation of the dealership to prepare and file such Forms 8300, this corporate taxpayer submits that the failure to file the completed Forms 8300 must be attributed to inadvertence and lack of knowledge of "new" clerical employees, not to an intentional disregard of these statutory requirements by this dealership. Bale Chevrolet, Inc. did not, in any of these four instances (where these Forms 8300 apparently did not get mailed to the IRS office in Detroit, Michigan), conspire with the company's customers to not file the Form 8300. Also, it must be noted, in a practical (as opposed to a theoretical or technical) application of these filing requirements, none of these four questioned transactions involved any customers or any vehicle of the type that are normally associated with drug dealers, which is why Congress enacted this filing requirement in the first place. Clearly, "drug dealers" do not generally buy the general type of vehicles sold by a franchised Chevrolet dealer.

The deficiency that actually occurred in the filing of the four Forms 8300 (as was determined by Revenue Agent Miller) has been cured, inasmuch as this corporate taxpayer has prepared the additional Form 8300 and has filed all four of these Forms 8300 with the IRS, that are in question in this audit. The Company has also notified each of the four customers, by separate letter, as required by the provisions of § 6050I that the Forms 8300 have been filed with the Internal Revenue Code. Therefore, for law enforcement purposes, all of the information required has now been placed into the IRS' computer

system.  However, as noted above, a review of the four transactions will reveal that none of the customers involved, in anyway, come even close to meeting the normal "profile of a drug dealer."  Instead, these customers were generally ordinary citizens (some older than the average customer's age) who brought cash or cash equivalents to the dealership to pay for their vehicles.  There is nothing criminal about using "legal tender to pay one's debts."

Though a further Supplemental to this Claim for Refund will be prepared and filed with representatives of the IRS, to rebut the legal arguments and citations set forth by the IRS representatives of this "third" audit, the undersigned counsel for Bale Chevrolet, Inc. submits that the "purpose" for which Congress passed the requirement for automobile dealers to file Forms 8300 must be considered in evaluating whether this automobile dealer "intentionally" failed to file the Forms 8300 in these four sales transactions.  When Congress places a law enforcement assistance requirement on a "for profit" business, without any reimbursement or credit for the business for being required to preform the law enforcement assistance task, then it is submitted that a "practical" interpretation of the statutory requirements must be taken by the IRS in checking the compliance record of such "for profit" business with the filing requirement that is designed as a law enforcement aid.

The draconian penalty provisions of the Internal Revenue Code that are in question here were clearly enacted by Congress as a tool that was intended to penalize automobile dealers who, to make a sale, "intentionally" tried to circumvent the Form 8300 filing requirement, so as to achieve the sale and to benefit a questionable customer. Congress never intended for these penalty provisions to be "revenue raising" provisions, like income or excises taxes.  However, the undersigned counsel for this corporate taxpayer submits that this is exactly what results from the utilization of the  the type of interpretation placed on these statutes by the IRS' representatives here, which interpretation has resulted in the IRS asserting that Bale Chevrolet, Inc. had to pay the federal government another $100, 000 of its earnings (or its assets, if the Company operated at a loss for federal income tax purposes) during these three years.   Bale Chevrolet, Inc. has clearly met the "spirit" of the law, with its "good faith" filings, including filings on transactions that the IRS determined (under rather complex regulations) were not required of by the Company.    These laws and their severe penalty provisions were enacted by Congress to insure that the automobile dealerships of this country  provided information to the IRS, who in turn shared such information with federal law enforcement agencies, especially those agencies involved "principally in identifying transactions by drug dealers" or other individuals who are attempting to commit criminal activities.  Thus, the "technical" and harsh interpretation of these penalty provisions by the IRS representatives, in this factual setting, did not result in the type of action Congress intended when the statue in question was enacted.  Instead, the position taken by the IRS in this audit is, as a practical matter, one of attempting to impose a confiscatory fine on Bale Chevrolet, Inc., so as to raise additional revenue for general operations of the federal government.

Bale Chevrolet, Inc., as a business with civic and public responsiblities to the members of the community that it serves, has established operating policies that support its position regarding an adherence to the "anti drug" reasons for which the penalties in question were enacted by Congress.  Bale Chevrolet, Inc. has established and enforces

a very, very strong "zero tolerance" drug policy for its employees, and has done so for years.

John H. Bale, as the owner and President of Bale Chevrolet, Inc., has, years ago, established a "zero tolerance" policy for drug use by employees of this corporate taxpayer. The company has an established policy of random drug testing of all employees and all new employees must undergo a drug test before being hired. In addition, Mr. Bale has arranged with federal and local law enforcement officers to periodically have drug dogs make unannounced searches of the company's premises, to make sure that drugs are not kept or used in the workplace by the company's employees. Also, in any case in which there is a theft or an accident involving a company employee, all company employees who may have been involved are subjected to drug tests. These are also not the usual urine tests that can sometimes be passed by active drug users. Instead, the drug testing used by the company is virtually fool proof in its application.

The imposition and use of this "anti drug policy" resulted in a number of employees quitting when the dealership first established the "zero tolerance" policy. In fact, several of the company's employees, who were substantial producers of business, left and became associated with other local dealerships that do not have this stringent type of drug testing policy. There, these former employees are still substantial producers for the competitors of Bale Chevrolet, Inc.. Notwithstanding that fact, John H. Bale has committed his dealership to being a 100% "drug free" business and he sees that that policy is constantly and consistently enforced.

Therefore, the undersigned submits that a business that has established such a policy with regard to "drug use" by its employees should not be held, by a strained interpretation of the statutes in question by the IRS' audit personnel, to be placed in the same category as dealerships that willing solicited the type of business from criminal elements that the "reporting requirement" for Forms 8300 was enacted to stop.

Bale Chevrolet, Inc. submits that it has, more than any other dealership in the State of Arkansas, established and adhered to a "zero tolerance" policy with regard to use of drugs or drugs in the workplace. The preparation and filing of Forms 8300 by businesses involved in the automobile sales business is a requirement of federal law that is intended to assist law enforcement agencies in the prevention of interdiction of, financial transactions involving drug dealers and users, and other non law abiding individuals. This corporate taxpayer submits that its record involving the prohibition of illegal drugs in its workplace is the most stringent of any automobile dealership in the State of Arkansas. Because of this fact, Bale Chevrolet, Inc. submits that the representatives of the IRS that review this Claim for Refund must consider the "purpose for the penalty provision" and the company's strong "anti drug stance," when assessing whether the failure of this corporate taxpayer to timely file the four Forms 8300 was "intentional," as was alleged by Revenue Agent Miller, or that the failure was "inadvertent," as claimed by the Company, which would make it liable for the much lower $50 or $100 per Form 8300 transaction.

A thorough analysis of each of the transactions involving the filing of Forms

8300 by Bale Chevrolet, Inc., during the three-year period of this audit, should be considered by representatives of the IRS.  This corporate taxpayer submits that it should not have been subjected to the imposition of the confiscatory penalties of more than $100,000, as assessed by the IRS because of the Company's apparent failure to timely file the four Forms 8300 during the three year period covered by the audit in question was not "intentional."  There was absolutely no warning given to Bale Chevrolet, Inc., by the IRS' two prior audits on the draconian position the IRS took with regard to the Form 8300 filing requirement in this "third audit."

The standards for the IRS' imposing such confiscatory penalties have not been met by the facts of this disputed audit assessment.  Further, if the IRS intends to follow such a draconian enforcement policy, with regard to automobile dealerships' compliance with the filing requirements for Forms 8300, then the IRS must first make such enforcement policy known, generally, to the ownership and employees of Bale Chevrolet, Inc., and to other similarly situated automobile dealers in the State of Arkansas, before such drastic enforcement action is taken, without notice, after two audits were the Company appeared to "pass muster with flying colors." This type of stringent enforcement policy cannot be imposed by the IRS on an "ad hoc" audit basis, because such policy does not give the dealerships of this state a fair opportunity to take the "extra actions" that will be necessary to comply with the IRS' apparently stringent enforcement policy, that is going to be imposed on a "retroactive" basis.

The maximum penalty due on these four questioned transactions would have to be the $100 per transaction penalty, the same as was imposed by the IRS and agreed to on the single questioned transaction in the IRS' 1996 audit).  Such assertion is also based upon the apparent findings of the District Court Judge in the case of Kruse, Inc. v. United States, 213 F. Supp. 2d. 939 (N.D. Ind. 2002) (the only reported case on the issue of "intentional disregard of the Form 8300 filing requirement), as to what constitutes "intentional disregard" of the duty to file the Form 8300 under 26 U.S.C. §§ 6050I and 6721.  It clearly appears that the four transactions of Bale Chevrolet, Inc. that were questioned by the IRS auditor fall outside of a clear delineation either way, i.e., whether a Form 8300 was required to be filed or not.

## CONCLUSION

For the aforementioned reasons, Bale Chevrolet, Inc. submits that it is entitled to a full refund of the $100,200 in penalties, plus interest, pursuant to the provisions of 26 U.S.C. § 6721 and 6722, for its apparent failure to timely file Forms 8300 with regard to the four transactions in questions.  Its failure to file such Forms 8300 was not "intentional," as alleged by the auditing Revenue Agent, but, instead, the Company submits that its failure in this regard was inadvertent and due to a normal turn over in business office personnel. Therefore, Bale Chevrolet, Inc. submits that it should only have had imposed against it the minimal fines provided by the provisions of 26 U.S.C. §§ 6721 and 6722, where such failures to file are deemed not to be intentional, but, instead, are due to oversight in the application of normal business practices.

The IRS has clearly "gotten the attention" of this corporate taxpayer with regard to this Form 8300 compliance issue.  The Company has filed more Forms 8300, since this audit was completed, than it normally did in several years.  However, in filing on so many transactions involving larger amounts of cash or cash equivalents (whether over $10,000, or not), the Company is getting rejections from the Detroit office of the IRS with regard to such filings.  Clearly, the IRS must establish and utilize a "reasonable" audit enforcement policy, if it wants the useful help and assistance of the vehicle dealers of the country to try and help it help the IRS, in turn, help law enforcement agencies combat the criminal elements of this country in drying up their financial transactions.

Respectfully submitted,

Eugene G. Sayre

Form **2848**
(Rev. December 1997)
Department of the Treasury
Internal Revenue Service

**Power of Attorney
and Declaration of Representative**

▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only

Received by:

Name _____
Telephone _____
Function _____
Date ___ / ___ / ___

**Part I**   Power of Attorney (Please type or print.)

**1   Taxpayer information** (Taxpayer(s) must sign and date this form on page 2, line 9.)

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Bale Chevrolet, Inc.<br>13101 Chenal Parkway<br>Little Rock, AR  72211 | | 71 0009350 |
| | Daytime telephone number | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2   Representative(s)** (Representative(s) must sign and date this form on page 2, Part II.)

| Name and address | |
|---|---|
| John Earl<br>Fourth and Center Street, Suite 1300<br>Little Rock, AR  72201 | CAF No. .............................<br>Telephone No. 501-372-3275<br>Fax No. ......... 501-376-3643<br>Check if new: Address ☐   Telephone No. ☐ |
| Eugene G. Sayre<br>Jack, Lyon & Jones, P.A.<br>3400 TCBY Tower, 425 West Capitol Avenue<br>Little Rock, AR  72201 | CAF No. .............................<br>Telephone No. 501-375-1122<br>Fax No. ......... 501-375-1027<br>Check if new: Address ☐   Telephone No. ☐ |
| Name and address | CAF No. .............................<br>Telephone No. .............................<br>Fax No. .............................<br>Check if new: Address ☐   Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3   Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Penalties | Form 8300 | 1998-2000 |
| | | |
| | | |

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. (See instruction for Line 4—Specific uses not recorded on CAF.) . . . . . . . . . . ▶ ☐

**5   Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see instruction for **Line 5—Acts authorized**).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: .........................

.................................................................................................................

.................................................................................................................

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the instructions for more information.*

**6   Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH**, refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

For Paperwork Reduction and Privacy Act Notice, see the separate instructions.     Cat. No. 11980J     Form **2848** (Rev. 12-97)

**7**   **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

**a**   If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   ▶

**b**   If you also want the second representative listed to receive a copy of such notices and communications, check this box .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   ▶

**c**   If you do not want any notices or communications sent to your representative(s), check this box .   .   .   .   .   .   ▶

**8**   **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here .   .   .   .   .   .   .   .   .   .   .   ▶
   **YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9**   **Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

   ▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| Signature | Title (if applicable) | Date |
|---|---|---|
| *(signature)*  Sec/Treas  5/24/01 | Secretary-Treasurer | |

Print Name   *Amy Shrum*

| Signature | Date | Title (if applicable) |
|---|---|---|

Print Name

---

**Part II**   **Declaration of Representative**

Under penalties of perjury, I declare that:

* I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
* I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
* I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
* I am one of the following:

  **a**   Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
  **b**   Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  **c**   Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.
  **d**   Officer—a bona fide officer of the taxpayer's organization.
  **e**   Full-Time Employee—a full-time employee of the taxpayer.
  **f**   Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
  **g**   Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
  **h**   Unenrolled Return Preparer—an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation—Insert above letter (a–h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Ark | *(signature)* | 5-24-0 |
| A | Ark | *Eugene Sayre* | 5-24-0 |

*U.S. GPO 1998-419-35

Re:   **Bale Chevrolet Company v. United States**
      **U. S. D. C., E. D. Ark., Western Division**
      **Docket No.**

# COMPLAINT

# EXHIBIT B-2

| Form **843** | **Claim for Refund and Request for Abatement** | | OMB No. 1545-0024 |
|---|---|---|---|
| (Rev. November 2002) Department of the Treasury Internal Revenue Service | ► See separate instructions. | | |

*Use Form 843 only if your claim involves* **(a)** *one of the taxes shown on line 3a or* **(b)** *a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for—*
- An overpayment of income taxes;
- A refund for nontaxable use (or sales) of fuel; or
- An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Type or print | Name of claimant  Bale Chevrolet, Inc. | Your SSN or ITIN |
|---|---|---|
| | Address (number, street, and room or suite no.)  13101 Chenal Parkway | Spouse's SSN or ITIN |
| | City or town, state, and ZIP code  Little Rock, AR  72211 | Employer identification number (EIN)  71 : 0009350 |
| | Name and address shown on return if different from above | Daytime telephone number  (    ) |

**1** Period. Prepare a separate Form 843 for each tax period
From 1 / 1 / 99 to 12 / 31 / 99

**2** Amount to be refunded or abated
$ 54,636.15*

**3a** Type of tax, penalty, or addition to tax:
☐ Employment  ☐ Estate  ☐ Gift  ☒ Excise (see instructions)
☒ Penalty—IRC section ► 6721 & 6722

**b** Type of return filed (see instructions):
☐ 706  ☐ 709  ☐ 940  ☐ 941  ☐ 943  ☐ 945  ☐ 990-PF  ☐ 4720  ☒ Other (specify) Form 8300

**4a** Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ►

**5** **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

(See Attachment)

RECEIVED
W&I-Field Assistance

JAN 1 0 2005

AREA 3, TERRITORY 5, GRP 57
INTERNAL REVENUE SERVICE
LITTLE ROCK, AR

* Plus interest, fees, or other awards as may be allowed by law.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Signature (Title, if applicable. Claims by corporations must be signed by an officer.)    Date  1-10-05

Signature    Date

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 10180R    Form **843** (Rev. 11-2002)

## ATTACHMENT TO CLAIMS FOR REFUND - FORM 843

RE:   **Bale Chevrolet, Inc.**
         **Forms 8300 Penalties**
         **1998-1999-2000**

## A STATEMENT OF FACTS

**1. General Corporate Business.** Bale Chevrolet, Inc. is a corporation that was formed in 1923 under the laws of the State of Arkansas. Since 1923, this company has continually been engaged in the business of operating a new and used automobile and truck dealership franchised with General Motors for its Chevrolet Division. The corporation's principal place of business is now located at 13101 Chenal Parkway, Little Rock, Arkansas 72201.

This company has always been a closely held corporation by members of the Bale family. The President and principal owner of Bale Chevrolet, Inc. is now John H. Bale of Little Rock, Arkansas. Mr. Bale has had a lifelong relationship with this family owned dealership. Mr. Bale participates in a number of civic and charitable activities in the State of Arkansas, including sitting on the Board of Trustees of the Arkansas Childrens' Hospital.

Bale Chevrolet, Inc. is a high volume dealership, where more than 2,500 new automobiles and trucks are sold each year, as well as a large number of used automobiles and trucks. Since the federal law was enacted wherein businesses selling automobiles are required to file Forms 8300, Report of Cash Payments over $10,000 Received in the Trade of Business, Bale Chevrolet, Inc. has endeavored, in good faith, to comply with all of the provisions of this federal tax law in all respects.

**2. Compliance Record.** Bale Chevrolet, Inc. has been audited on three occasions by representatives of the Internal Revenue Service concerning compliance with the provisions of 26 U.S.C. § 6050I requiring the filing of Forms 8300 with the Internal Revenue Service on cash transactions or cash equivalents of $10,000 or more.

**(a)  First Audit.** The first audit by the IRS, in the early 1990s, did not raise any questions or find any errors with regard to the filing of Forms 8300 by the company.

**(b)  Second Audit.** In 1996, Revenue Agent Brian Miller conducted an audit of Bale Chevrolet, Inc.'s compliance with the provisions of 26 U.S.C. § 6050I and determined that one Form 8300 had not been timely filed by the company with the IRS concerning a transaction involving $10,000 or more. Such Form 8300 was prepared and filed, and no action was taken by the IRS concerning the proposed imposition of any penalties against the corporation for this one failure.

**(c)  Third Audit.** In 2000, Revenue Agent Brian Miller again conducted an audit of Bale Chevrolet, Inc.'s compliance with the provisions of 26 U.S.C. § 6050I for the years 1998, 1999 and 2000 (in which years a total of more than 7,000 new automobiles

and trucks were sold by the dealership).  There were four separate sales transactions for which Forms 8300 were not timely filed with the IRS (though, in three of these four instances, Forms 8300 were completed, and in two instances the Forms 8300 were acknowledged and signed by the customers, but the IRS has no record of such Forms 8300 being filed with the IRS).  As with the prior 1996 audit, there was one instance, during the years 1998, 1999 and 2000, where Bale Chevrolet, Inc. should have, but did not, timely prepare or file a Form 8300 on a transaction involving $10,000 in cash or cash equivalents. In all four of these instances, this corporate taxpayer prepared Forms 8300 and such forms were immediately filed with the IRS for these four transactions and separate written notifications have been sent to the four individuals involved in the purchase of new automobiles or trucks involving cash or cash equivalent transactions of $10,000 or more, that have been questioned by Revenue Agent Miller.

However, as a result of the "third audit," Revenue Agent Miller, to the total disbelief of the representatives and owners of Bale Chevrolet, Inc.,  proposed the assessment of very large penalties (totaling $100,200), pursuant to the provisions of 26 U.S.C. §§ 6721 and 6722, Revenue Agent Miller proposed the assessment of these penalties, under the provisions of 26 U.S.C. § 6721(e) in the amount of $25,000 per transaction (rather than the $50.00 per transaction provided by 26 U.S.C. § 6721(a)), because Revenue Agent Miller alleged that the failure of Bale Chevrolet, Inc. to timely file the four Forms 8300 were "intentional" failures.   This characterization of "intentional" disregard of the provisions of the applicable statute and regulations was "protested" by Bale Chevrolet, Inc. to the Appellate Division of the Internal Revenue Service, where the proposed assessments were erroneously sustained.

3. **Compliance Procedures.** Bale Chevrolet, Inc. has established a system for attempting to assure 100% compliance with the requirements that Forms 8300 be filed, as required by 26 U.S.C. § 6050I, in any instance in which a cash or cash equivalent payment of $10,000 or more is involved.  In fact, Bale Chevrolet, Inc., during the years 1998, 1999 and 2000, filed a large number of Forms 8300 with the Internal Revenue Service, as required by the applicable statute.  On several occasions, where the IRS had changed the Form (which Forms 8300 had not been either secured or made available to our corporate client), the completed Forms were returned to Bale Chevrolet, Inc. by the IRS for resubmission on "new" Forms 8300 by the Detroit, Michigan office of the IRS, where these Forms 8300 are directed to be filed.

Also, there are several instances where Bale Chevrolet, Inc. filed Forms 8300 with the IRS, during the three years 1998 through 2000, where the representatives of the IRS determined that there was no need, pursuant to the provisions of the applicable statutes and regulations, for this corporate taxpayer to have filed such Forms 8300. However, this corporate taxpayer submits that its "good faith" attempts to comply with the statutory requirement for the filing of such information forms with the IRS is exemplified by its filing of Forms 8300 on cash transactions, on several occasions during this three year audit period, where such Forms 8300 were determined by the IRS not to be needed.

The number of sales transactions made by Bale Chevrolet each year,  that

involve the filing of Forms 8300, are very few in number, approaching a de minimis number, when compared with the large number of sales of units of new automobiles and trucks sold by the dealership. In fact, with more than 98 or 99% of all sales transactions being conducted by Bale Chevrolet, Inc. are made by check or financing, where probably well less than one (1%) of all of the sales transactions conducted by this corporate taxpayer involve even a substantial amount of cash (e.g. several thousand dollars, as a down payment on a new vehicle, etc.).

The company's employee handbook attempted to inform each employee that there is a need to notify the appropriate company employee, whenever a cash transaction involves $10,000 or more. The initial employee required to search for transactions that would require filing of Forms 8300 was the Manager of the Finance and Insurance Department, through whom all new vehicle contracts are routed. This employee's primary duties were the securing of financing and insurance on the sale of vehicles, where it is needed. However, this employee, Mary Alexander, noted when a Form 8300 should be prepared by the company. Such notation was placed in the sheath of paperwork on the sales transaction and the "paperwork" was sent to one of approximately 3 to 5 clerical employees in the business office of the dealership to complete all of the necessary forms, including the Form 8300, when required. The completed Form 8300 was included in the file of "paperwork" (which also includes all of the other documentation normally associated with the sale of a vehicle), so that the completed Form 8300 was then presented to the Office Manager. It was, and is, the responsibility of the Office Manager to check to see that the Form 8300 is mailed to the IRS office in Detroit, Michigan.

Shortly after the 1996 audit by the Internal Revenue Service, the Accounting Manager left the employ of Bale Chevrolet, Inc.. Thereupon, the former Office Manager, Amy Shrum, was promoted to the position of Accounting Manager and a new Office Manager was named. As with other similar businesses (i.e. banks, insurance companies, etc.), there is a fairly high turnover in the employees in the business offices of automobile dealerships. Bale Chevrolet, Inc. is no exception. Thus, from 1996 through 2000, there was a complete turnover in the employees who actually processed all the "paperwork" associated with purchase and financing of the sale of new automobiles and trucks by the dealership. Also, the Office Manager's position at Bale Chevrolet, Inc. has been held by at least two different persons, since the IRS' 1996 compliance audit of the company on its filing of Forms 8300. Besides looking for cash transactions that require the preparation and filing of Forms 8300, these business office personnel must also prepare all documents that are necessary for financing with GMAC, the notations for state sales tax purposes and all other aspects of the financial side of the dealership's business.

Since the third IRS audit was performed, Ms. Shrum has worked with the dealership's current Office Manager and the Finance and Insurance Manager to create even additional and more stringent procedures and documents in an attempt to make sure that the company, in "good faith," can comply with the requirements of filing Forms 8300, as is required by the provisions of 26 U.S.C. §6050I. A bright green sheet was created by Ms. Shrum (after the third IRS audit was completed) for use in all transactions involving Forms 8300. These bright green forms were also placed prominently in each cubicle of

an employee of the business office, in an attempt to remind each of those employees to make sure they check each transaction to ascertain if a Form 8300 should be filed, when necessary. As noted above, the requirement of preparing and filing a Form 8300 on a sales transaction conducted by Bale Chevrolet, Inc. occurs in probably less than .01% of the sales transactions entered into by the dealership in any one year.

The Congress enacted 26 U.S.C. §§ 6051I, 662 and 6627 to assist in the control of "money laundering," especially by individuals engaged in the illegal drug trade (not as a "bureacratic requirement" to test honest businessmen). John Bale has, for many years, had a mandatory drug testing and screening program for all company employees. Mr. Bale has set a high standard for his employees in this regard. In fact, Bale Chevrolet, Inc. has lost several high solume salesmen, because Mr. Bale will not tolerate the use of illegal drugs by those employed by Bale Chevrolet, Inc. Mr. Bale has worked closely with the Little Rock Police Department and the Pulaski County Sheriff's Office in these anti-drug programs. This fact should be considered, in assessing the finding of the representatives of the IRS' Examination Division and Appellate Division that Bale Chevrolet, Inc. "intentionally" disregarded the requirement for filing Forms 8300 during the years 1998-2000.

## ARGUMENT

This corporate taxpayer disagrees with the IRS representative's factual determination that the Company's failure to timely file the four Forms 8300 during this three year period of time was "intentional." Such determination was, in fact, rebutted by the fact that three of the four questioned transactions had Forms 8300 prepared for them by the dealership's employees, and, in two instances, the dealership's employees required the customers to even sign and acknowledge the preparation of the Forms 8300. Rather than any type of "intentional" disregard of the obligation of the dealership to prepare and file such Forms 8300, this corporate taxpayer submits that the failure to file the completed Forms 8300 must be attributed to inadvertence and lack of knowledge of "new" clerical employees, not to an intentional disregard of these statutory requirements by this dealership. Bale Chevrolet, Inc. did not, in any of these four instances (where these Forms 8300 apparently did not get mailed to the IRS office in Detroit, Michigan), conspire with the company's customers to not file the Form 8300. Also, it must be noted, in a practical (as opposed to a theoretical or technical) application of these filing requirements, none of these four questioned transactions involved any customers or any vehicle of the type that are normally associated with drug dealers, which is why Congress enacted this filing requirement in the first place. Clearly, "drug dealers" do not generally buy the general type of vehicles sold by a franchised Chevrolet dealer.

The deficiency that actually occurred in the filing of the four Forms 8300 (as was determined by Revenue Agent Miller) has been cured, inasmuch as this corporate taxpayer has prepared the additional Form 8300 and has filed all four of these Forms 8300 with the IRS, that are in question in this audit. The Company has also notified each of the four customers, by separate letter, as required by the provisions of § 6050I that the Forms 8300 have been filed with the Internal Revenue Code. Therefore, for law enforcement purposes, all of the information required has now been placed into the IRS' computer

system.  However, as noted above, a review of the four transactions will reveal that none of the customers involved, in anyway, come even close to meeting the normal "profile of a drug dealer." Instead, these customers were generally ordinary citizens (some older than the average customer's age) who brought cash or cash equivalents to the dealership to pay for their vehicles.  There is nothing criminal about using "legal tender to pay one's debts."

Though a further Supplemental to this Claim for Refund will be prepared and filed with representatives of the IRS, to rebut the legal arguments and citations set forth by the IRS representatives of this "third" audit, the undersigned counsel for Bale Chevrolet, Inc. submits that the "purpose" for which Congress passed the requirement for automobile dealers to file Forms 8300 must be considered in evaluating whether this automobile dealer "intentionally" failed to file the Forms 8300 in these four sales transactions.  When Congress places a law enforcement assistance requirement on a "for profit" business, without any reimbursement or credit for the business for being required to preform the law enforcement assistance task, then it is submitted that a "practical" interpretation of the statutory requirements must be taken by the IRS in checking the compliance record of such "for profit" business with the filing requirement that is designed as a law enforcement aid.

The draconian penalty provisions of the Internal Revenue Code that are in question here were clearly enacted by Congress as a tool that was  intended to penalize automobile dealers who, to make a sale, "intentionally" tried to circumvent the Form 8300 filing requirement, so as to achieve the sale and to benefit a questionable customer. Congress never intended for these penalty provisions  to be "revenue raising" provisions, like income or excises taxes.  However, the undersigned counsel for this corporate taxpayer submits that this is exactly what results from the utilization of the  type of interpretation placed on these statutes by the IRS' representatives here, which interpretation has resulted in the IRS asserting that Bale Chevrolet, Inc. had to pay the federal government another $100, 000 of its earnings (or its assets, if the Company operated at a loss for federal income tax purposes) during these three years.    Bale Chevrolet, Inc. has clearly met the "spirit" of the law, with its "good faith" filings, including filings on transactions that the IRS determined (under rather complex regulations) were not required of by the Company.   These laws and their severe penalty provisions were enacted by Congress to insure that the automobile dealerships of this country  provided information to the IRS, who in turn shared such information with federal law enforcement agencies, especially those agencies involved "principally in identifying transactions by drug dealers" or other individuals who are attempting to commit criminal activities. Thus, the "technical" and harsh interpretation of these penalty provisions by the IRS representatives, in this factual setting, did not result in the type of action Congress intended when the statue in question was enacted.  Instead, the position taken by the IRS in this audit is, as a practical matter, one of attempting to impose a confiscatory fine on Bale Chevrolet, Inc., so as to raise additional revenue for general operations of the federal government.

Bale Chevrolet, Inc., as a business with civic and public responsiblities to the members of the community that it serves, has established operating policies that support its position regarding an adherence to the "anti drug" reasons for which the penalties in question were enacted by Congress. Bale Chevrolet, Inc. has established and enforces

a very, very strong "zero tolerance" drug policy for its employees, and has done so for years.

John H. Bale, as the owner and President of Bale Chevrolet, Inc., has, years ago, established a "zero tolerance" policy for drug use by employees of this corporate taxpayer. The company has an established policy of random drug testing of all employees and all new employees must undergo a drug test before being hired. In addition, Mr. Bale has arranged with federal and local law enforcement officers to periodically have drug dogs make unannounced searches of the company's premises, to make sure that drugs are not kept or used in the workplace by the company's employees. Also, in any case in which there is a theft or an accident involving a company employee, all company employees who may have been involved are subjected to drug tests. These are also not the usual urine tests that can sometimes be passed by active drug users. Instead, the drug testing used by the company is virtually fool proof in its application.

The imposition and use of this "anti drug policy" resulted in a number of employees quitting when the dealership first established the "zero tolerance" policy. In fact, several of the company's employees, who were substantial producers of business, left and became associated with other local dealerships that do not have this stringent type of drug testing policy. There, these former employees are still substantial producers for the competitors of Bale Chevrolet, Inc.. Notwithstanding that fact, John H. Bale has committed his dealership to being a 100% "drug free" business and he sees that that policy is constantly and consistently enforced.

Therefore, the undersigned submits that a business that has established such a policy with regard to "drug use" by its employees should not be held, by a strained interpretation of the statutes in question by the IRS' audit personnel, to be placed in the same category as dealerships that willing solicited the type of business from criminal elements that the "reporting requirement" for Forms 8300 was enacted to stop.

Bale Chevrolet, Inc. submits that it has, more than any other dealership in the State of Arkansas, established and adhered to a "zero tolerance" policy with regard to use of drugs or drugs in the workplace. The preparation and filing of Forms 8300 by businesses involved in the automobile sales business is a requirement of federal law that is intended to assist law enforcement agencies in the prevention of interdiction of, financial transactions involving drug dealers and users, and other non law abiding individuals. This corporate taxpayer submits that its record involving the prohibition of illegal drugs in its workplace is the most stringent of any automobile dealership in the State of Arkansas. Because of this fact, Bale Chevrolet, Inc. submits that the representatives of the IRS that review this Claim for Refund must consider the "purpose for the penalty provision" and the company's strong "anti drug stance," when assessing whether the failure of this corporate taxpayer to timely file the four Forms 8300 was "intentional," as was alleged by Revenue Agent Miller, or that the failure was "inadvertent," as claimed by the Company, which would make it liable for the much lower $50 or $100 per Form 8300 transaction.

A thorough analysis of each of the transactions involving the filing of Forms

8300 by Bale Chevrolet, Inc., during the three-year period of this audit, should be considered by representatives of the IRS. This corporate taxpayer submits that it should not have been subjected to the imposition of the confiscatory penalties of more than $100,000, as assessed by the IRS because of the Company's apparent failure to timely file the four Forms 8300 during the three year period covered by the audit in question was not "intentional." There was absolutely no warning given to Bale Chevrolet, Inc., by the IRS' two prior audits on the draconian position the IRS took with regard to the Form 8300 filing requirement in this "third audit."

The standards for the IRS' imposing such confiscatory penalties have not been met by the facts of this disputed audit assessment. Further, if the IRS intends to follow such a draconian enforcement policy, with regard to automobile dealerships' compliance with the filing requirements for Forms 8300, then the IRS must first make such enforcement policy known, generally, to the ownership and employees of Bale Chevrolet, Inc., and to other similarly situated automobile dealers in the State of Arkansas, before such drastic enforcement action is taken, without notice, after two audits were the Company appeared to "pass muster with flying colors." This type of stringent enforcement policy cannot be imposed by the IRS on an "ad hoc" audit basis, because such policy does not give the dealerships of this state a fair opportunity to take the "extra actions" that will be necessary to comply with the IRS' apparently stringent enforcement policy, that is going to be imposed on a "retroactive" basis.

The maximum penalty due on these four questioned transactions would have to be the $100 per transaction penalty, the same as was imposed by the IRS and agreed to on the single questioned transaction in the IRS' 1996 audit). Such assertion is also based upon the apparent findings of the District Court Judge in the case of Kruse, Inc. v. United States, 213 F. Supp. 2d. 939 (N.D. Ind. 2002) (the only reported case on the issue of "intentional disregard of the Form 8300 filing requirement), as to what constitutes "intentional disregard" of the duty to file the Form 8300 under 26 U.S.C. §§ 6050I and 6721. It clearly appears that the four transactions of Bale Chevrolet, Inc. that were questioned by the IRS auditor fall outside of a clear delineation either way, i.e., whether a Form 8300 was required to be filed or not.

## CONCLUSION

For the aforementioned reasons, Bale Chevrolet, Inc. submits that it is entitled to a full refund of the $100,200 in penalties, plus interest, pursuant to the provisions of 26 U.S.C. § 6721 and 6722, for its apparent failure to timely file Forms 8300 with regard to the four transactions in questions. Its failure to file such Forms 8300 was not "intentional," as alleged by the auditing Revenue Agent, but, instead, the Company submits that its failure in this regard was inadvertent and due to a normal turn over in business office personnel. Therefore, Bale Chevrolet, Inc. submits that it should only have had imposed against it the minimal fines provided by the provisions of 26 U.S.C. §§ 6721 and 6722, where such failures to file are deemed not to be intentional, but, instead, are due to oversight in the application of normal business practices.

The IRS has clearly "gotten the attention" of this corporate taxpayer with regard to this Form 8300 compliance issue. The Company has filed more Forms 8300, since this audit was completed, than it normally did in several years. However, in filing on so many transactions involving larger amounts of cash or cash equivalents (whether over $10,000, or not), the Company is getting rejections from the Detroit office of the IRS with regard to such filings. Clearly, the IRS must establish and utilize a "reasonable" audit enforcement policy, if it wants the useful help and assistance of the vehicle dealers of the country to try and help it help the IRS, in turn, help law enforcement agencies combat the criminal elements of this country in drying up their financial transactions.

Respectfully submitted,

Eugene G. Sayre

Form **2848**
(Rev. December 1997)

Department of the Treasury
Internal Revenue Service

# Power of Attorney
## and Declaration of Representative

▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only

Received by:

Name _____

Telephone _____

Function _____

Date ____ / ____ / ____

**Part I** Power of Attorney (Please type or print.)

| **1** | **Taxpayer information** (Taxpayer(s) must sign and date this form on page 2, line 9.) | | |
|---|---|---|---|

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Bale Chevrolet, Inc.<br>13101 Chenal Parkway<br>Little Rock, AR 72211 | | 71 : 0009350 |
| | Daytime telephone number | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2   Representative(s)** (Representative(s) must sign and date this form on page 2, Part II.)

| Name and address | |
|---|---|
| John Earl<br>Fourth and Center Street, Suite 1300<br>Little Rock, AR 72201 | CAF No. _____<br>Telephone No. 501-372-3275<br>Fax No. 501-376-3643<br>Check if new: Address ☐   Telephone No. ☐ |
| Name and address<br>Eugene G. Sayre<br>Jack, Lyon & Jones, P.A.<br>3400 TCBY Tower, 425 West Capitol Avenue<br>Little Rock, AR 72201 | CAF No. _____<br>Telephone No. 501-375-1122<br>Fax No. 501-375-1027<br>Check if new: Address ☐   Telephone No. ☐ |
| Name and address | CAF No. _____<br>Telephone No. _____<br>Fax No. _____<br>Check if new: Address ☐   Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3   Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Penalties | Form 8300 | 1998-2000 |
| | | |
| | | |

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. (See instruction for Line 4—Specific uses not recorded on CAF.) . . . . . . . . . . . ▶ ☐

**5   Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see instruction for **Line 5—Acts authorized**).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: _____

_____

**Note:** In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.

**Note:** The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the instructions for more information.

**6   Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH**, refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

For Paperwork Reduction and Privacy Act Notice, see the separate instructions.     Cat. No. 11980J     Form **2848** (Rev. 12-97)

**7** **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

**a** If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . . . . . . . . . . . . . . . . . . . . . . ▶

**b** If you also want the second representative listed to receive a copy of such notices and communications, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶

**c** If you do not want any notices or communications sent to your representative(s), check this box . . . . . . ▶

**8** **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here. . . . . . . . . . . ▶
**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9** **Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, execu receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on be of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| | | |
|---|---|---|
| _(signature)_ | Sec/Treas 5/24/01 | Secretary-Treasu |
| Signature | Date | Title (if applicable) |
| Amy Shrum | | |
| Print Name | | |
| | | |
| Signature | Date | Title (if applicable) |
| | | |
| Print Name | | |

---

**Part II** **Declaration of Representative**

Under penalties of perjury, I declare that:

• I am not currently under suspension or disbarment from practice before the Internal Revenue Service;

• I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;

• I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and

• I am one of the following:

**a** Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

**b** Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below

**c** Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.

**d** Officer—a bona fide officer of the taxpayer's organization.

**e** Full-Time Employee—a full-time employee of the taxpayer.

**f** Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).

**g** Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).

**h** Unenrolled Return Preparer—an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation—Insert above letter (a–h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Ark | _(signature)_ | 5-24-0 |
| A | Ark | Eugene L Payne | 5-24-0 |

Re:   **<u>Bale Chevrolet Company v. United States</u>**
      **U. S. D. C., E. D. Ark., Western Division**
      **Docket No.**


# COMPLAINT


# EXHIBIT B-3

**Form 843**
(Rev. November 2002)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.

**Do not** use Form 843 if your claim is for—
- An overpayment of income taxes;
- A refund for nontaxable use (or sales) of fuel; or
- An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name of claimant | Your SSN or ITIN |
|---|---|
| Bale Chevrolet, Inc. | |
| Address (number, street, and room or suite no.) | Spouse's SSN or ITIN |
| 13101 Chenal Parkway | |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| Little Rock, AR   72211 | 71 : 0009350 |
| Name and address shown on return if different from above | Daytime telephone number ( ) |

**1** Period. Prepare a separate Form 843 for each tax period
From 1 / 1 / 00 to 12 / 31 / 00

**2** Amount to be refunded or abated
$ $27,375.01*

**3a** Type of tax, penalty, or addition to tax:
☐ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☒ Penalty—IRC section ▶ 6721 & 6722

**b** Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☒ Other (specify) Form 8300

**4a** Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶

**5** Explanation and additional claims. Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

(See Attachment)

RECEIVED
W&I-Field Assistance

JAN 1 0 2005

AREA 3, TERRITORY 5, GRP 87
INTERNAL REVENUE SERVICE
LITTLE ROCK, AR

\* Plus interest, fees, or other awards as may be allowed by law.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Signature (Title, if applicable. Claims by corporations must be signed by an officer.)     Date   1-10-05

Signature     Date

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.     Cat. No. 10180R     Form **843** (Rev. 11-2002)

## ATTACHMENT TO CLAIMS FOR REFUND - FORM 843

RE:   **Bale Chevrolet, Inc.**
      **Forms 8300 Penalties**
      **1998-1999-2000**

## A STATEMENT OF FACTS

1. **General Corporate Business.** Bale Chevrolet, Inc. is a corporation that was formed in 1923 under the laws of the State of Arkansas. Since 1923, this company has continually been engaged in the business of operating a new and used automobile and truck dealership franchised with General Motors for its Chevrolet Division. The corporation's principal place of business is now located at 13101 Chenal Parkway, Little Rock, Arkansas 72201.

This company has always been a closely held corporation by members of the Bale family. The President and principal owner of Bale Chevrolet, Inc. is now John H. Bale of Little Rock, Arkansas. Mr. Bale has had a lifelong relationship with this family owned dealership. Mr. Bale participates in a number of civic and charitable activities in the State of Arkansas, including sitting on the Board of Trustees of the Arkansas Childrens' Hospital.

Bale Chevrolet, Inc. is a high volume dealership, where more than 2,500 new automobiles and trucks are sold each year, as well as a large number of used automobiles and trucks. Since the federal law was enacted wherein businesses selling automobiles are required to file Forms 8300, Report of Cash Payments over $10,000 Received in the Trade of Business, Bale Chevrolet, Inc. has endeavored, in good faith, to comply with all of the provisions of this federal tax law in all respects.

2. **Compliance Record.** Bale Chevrolet, Inc. has been audited on three occasions by representatives of the Internal Revenue Service concerning compliance with the provisions of 26 U.S.C. § 6050I requiring the filing of Forms 8300 with the Internal Revenue Service on cash transactions or cash equivalents of $10,000 or more.

(a)   **First Audit.** The first audit by the IRS, in the early 1990s, did not raise <u>any</u> questions or find any errors with regard to the filing of Forms 8300 by the company.

(b)   **Second Audit.** In 1996, Revenue Agent Brian Miller conducted an audit of Bale Chevrolet, Inc.'s compliance with the provisions of 26 U.S.C. § 6050I and determined that one Form 8300 had not been timely filed by the company with the IRS concerning a transaction involving $10,000 or more. Such Form 8300 was prepared and filed, and no action was taken by the IRS concerning the proposed imposition of any penalties against the corporation for this one failure.

(c)   **Third Audit.** In 2000, Revenue Agent Brian Miller again conducted an audit of Bale Chevrolet, Inc.'s compliance with the provisions of 26 U.S.C. § 6050I for the years 1998, 1999 and 2000 (in which years a total of more than 7,000 new automobiles

and trucks were sold by the dealership).  There were four separate sales transactions for which Forms 8300 were not timely filed with the IRS (though, in three of these four instances, Forms 8300 were completed, and in two instances the Forms 8300 were acknowledged and signed by the customers, but the IRS has no record of such Forms 8300 being filed with the IRS).  As with the prior 1996 audit, there was one instance, during the years 1998, 1999 and 2000, where Bale Chevrolet, Inc. should have, but did not, timely prepare or file a Form 8300 on a transaction involving $10,000 in cash or cash equivalents. In all four of these instances, this corporate taxpayer prepared Forms 8300 and such forms were immediately filed with the IRS for these four transactions and separate written notifications have been sent to the four individuals involved in the purchase of new automobiles or trucks involving cash or cash equivalent transactions of $10,000 or more, that have been questioned by Revenue Agent Miller.

However, as a result of the "third audit," Revenue Agent Miller,to the total disbelief of the representatives and owners of Bale Chevrolet, Inc.,  proposed the assessment of very large penalties (totaling $100,200), pursuant to the provisions of 26 U.S.C. §§ 6721 and 6722, Revenue Agent Miller proposed the assessment of these penalties, under the provisions of 26 U.S.C. § 6721(e) in the amount of $25,000 per transaction (rather than the $50.00 per transaction provided by 26 U.S.C. § 6721(a)), because Revenue Agent Miller alleged that the failure of Bale Chevrolet, Inc. to timely file the four Forms 8300 were "intentional" failures.  This characterization of "intentional" disregard of the provisions of the applicable statute and regulations was "protested" by Bale Chevrolet, Inc. to the Appellate Division of the Internal Revenue Service, where the proposed assessments were erroneously sustained.

**3. Compliance Procedures.** Bale Chevrolet, Inc. has established a system for attempting to assure 100% compliance with the requirements that Forms 8300 be filed, as required by 26 U.S.C. § 6050I, in any instance in which a cash or cash equivalent payment of $10,000 or more is involved.  In fact, Bale Chevrolet, Inc., during the years 1998, 1999 and 2000, filed a large number of Forms 8300 with the Internal Revenue Service, as required by the applicable statute.  On several occasions, where the IRS had changed the Form (which Forms 8300 had not been either secured or made available to our corporate client), the completed Forms were returned to Bale Chevrolet, Inc. by the IRS for resubmission on "new" Forms 8300 by the Detroit, Michigan office of the IRS, where these Forms 8300 are directed to be filed.

Also, there are several instances where Bale Chevrolet, Inc. filed Forms 8300 with the IRS, during the three years 1998 through 2000, where the representatives of the IRS determined that there was no need, pursuant to the provisions of the applicable statutes and regulations, for this corporate taxpayer to have filed such Forms 8300. However, this corporate taxpayer submits that its "good faith" attempts to comply with the statutory requirement for the filing of such information forms with the IRS is exemplified by its filing of Forms 8300 on cash transactions, on several occasions during this three year audit period, where such Forms 8300 were determined by the IRS not to be needed.

The number of sales transactions made by Bale Chevrolet each year,  that

involve the filing of Forms 8300, are very few in number, approaching a de minimis number, when compared with the large number of sales of units of new automobiles and trucks sold by the dealership. In fact, with more than 98 or 99% of all sales transactions being conducted by Bale Chevrolet, Inc. are made by check or financing, where probably well less than one (1%) of all of the sales transactions conducted by this corporate taxpayer involve even a substantial amount of cash (e.g. several thousand dollars, as a down payment on a new vehicle, etc.).

The company's employee handbook attempted to inform each employee that there is a need to notify the appropriate company employee, whenever a cash transaction involves $10,000 or more. The initial employee required to search for transactions that would require filing of Forms 8300 was the Manager of the Finance and Insurance Department, through whom all new vehicle contracts are routed. This employee's primary duties were the securing of financing and insurance on the sale of vehicles, where it is needed. However, this employee, Mary Alexander, noted when a Form 8300 should be prepared by the company. Such notation was placed in the sheath of paperwork on the sales transaction and the "paperwork" was sent to one of approximately 3 to 5 clerical employees in the business office of the dealership to complete all of the necessary forms, including the Form 8300, when required. The completed Form 8300 was included in the file of "paperwork" (which also includes all of the other documentation normally associated with the sale of a vehicle), so that the completed Form 8300 was then presented to the Office Manager. It was, and is, the responsibility of the Office Manager to check to see that the Form 8300 is mailed to the IRS office in Detroit, Michigan.

Shortly after the 1996 audit by the Internal Revenue Service, the Accounting Manager left the employ of Bale Chevrolet, Inc.. Thereupon, the former Office Manager, Amy Shrum, was promoted to the position of Accounting Manager and a new Office Manager was named. As with other similar businesses (i.e. banks, insurance companies, etc.), there is a fairly high turnover in the employees in the business offices of automobile dealerships. Bale Chevrolet, Inc. is no exception. Thus, from 1996 through 2000, there was a complete turnover in the employees who actually processed all the "paperwork" associated with purchase and financing of the sale of new automobiles and trucks by the dealership. Also, the Office Manager's position at Bale Chevrolet, Inc. has been held by at least two different persons, since the IRS' 1996 compliance audit of the company on its filing of Forms 8300. Besides looking for cash transactions that require the preparation and filing of Forms 8300, these business office personnel must also prepare all documents that are necessary for financing with GMAC, the notations for state sales tax purposes and all other aspects of the financial side of the dealership's business.

Since the third IRS audit was performed, Ms. Shrum has worked with the dealership's current Office Manager and the Finance and Insurance Manager to create even additional and more stringent procedures and documents in an attempt to make sure that the company, in "good faith," can comply with the requirements of filing Forms 8300, as is required by the provisions of 26 U.S.C. §6050I. A bright green sheet was created by Ms. Shrum (after the third IRS audit was completed) for use in all transactions involving Forms 8300. These bright green forms were also placed prominently in each cubicle of

an employee of the business office, in an attempt to remind each of those employees to make sure they check each transaction to ascertain if a Form 8300 should be filed, when necessary. As noted above, the requirement of preparing and filing a Form 8300 on a sales transaction conducted by Bale Chevrolet, Inc. occurs in probably less than .01% of the sales transactions entered into by the dealership in any one year.

The Congress enacted 26 U.S.C. §§ 6051I, 662 and 6627 to assist in the control of "money laundering," especially by individuals engaged in the illegal drug trade (not as a "bureacratic requirement" to test honest businessmen). John Bale has, for many years, had a mandatory drug testing and screening program for all company employees. Mr. Bale has set a high standard for his employees in this regard. In fact, Bale Chevrolet, Inc. has lost several high solume salesmen, because Mr. Bale will not tolerate the use of illegal drugs by those employed by Bale Chevrolet, Inc. Mr. Bale has worked closely with the Little Rock Police Department and the Pulaski County Sheriff's Office in these anti-drug programs. This fact should be considered, in assessing the finding of the representatives of the IRS' Examination Division and Appellate Division that Bale Chevrolet, Inc. "intentionally" disregarded the requirement for filing Forms 8300 during the years 1998-2000.

## ARGUMENT

This corporate taxpayer disagrees with the IRS representative's factual determination that the Company's failure to timely file the four Forms 8300 during this three year period of time was "intentional." Such determination was, in fact, rebutted by the fact that three of the four questioned transactions had Forms 8300 prepared for them by the dealership's employees, and, in two instances, the dealership's employees required the customers to even sign and acknowledge the preparation of the Forms 8300. Rather than any type of "intentional" disregard of the obligation of the dealership to prepare and file such Forms 8300, this corporate taxpayer submits that the failure to file the completed Forms 8300 must be attributed to inadvertence and lack of knowledge of "new" clerical employees, not to an intentional disregard of these statutory requirements by this dealership. Bale Chevrolet, Inc. did not, in any of these four instances (where these Forms 8300 apparently did not get mailed to the IRS office in Detroit, Michigan), conspire with the company's customers to not file the Form 8300. Also, it must be noted, in a practical (as opposed to a theoretical or technical) application of these filing requirements, none of these four questioned transactions involved any customers or any vehicle of the type that are normally associated with drug dealers, which is why Congress enacted this filing requirement in the first place. Clearly, "drug dealers" do not generally buy the general type of vehicles sold by a franchised Chevrolet dealer.

The deficiency that actually occurred in the filing of the four Forms 8300 (as was determined by Revenue Agent Miller) has been cured, inasmuch as this corporate taxpayer has prepared the additional Form 8300 and has filed all four of these Forms 8300 with the IRS, that are in question in this audit. The Company has also notified each of the four customers, by separate letter, as required by the provisions of § 6050I that the Forms 8300 have been filed with the Internal Revenue Code. Therefore, for law enforcement purposes, all of the information required has now been placed into the IRS' computer

system. However, as noted above, a review of the four transactions will reveal that none of the customers involved, in anyway, come even close to meeting the normal "profile of a drug dealer." Instead, these customers were generally ordinary citizens (some older than the average customer's age) who brought cash or cash equivalents to the dealership to pay for their vehicles. There is nothing criminal about using "legal tender to pay one's debts."

Though a further Supplemental to this Claim for Refund will be prepared and filed with representatives of the IRS, to rebut the legal arguments and citations set forth by the IRS representatives of this "third" audit, the undersigned counsel for Bale Chevrolet, Inc. submits that the "purpose" for which Congress passed the requirement for automobile dealers to file Forms 8300 <u>must be considered</u> in evaluating whether this automobile dealer "intentionally" failed to file the Forms 8300 in these four sales transactions. When Congress places a law enforcement assistance requirement on a "for profit" business, without any reimbursement or credit for the business for being required to preform the law enforcement assistance task, then it is submitted that a "practical" interpretation of the statutory requirements must be taken by the IRS in checking the compliance record of such "for profit" business with the filing requirement that is designed as a law enforcement aid.

The draconian penalty provisions of the Internal Revenue Code that are in question here were clearly enacted by Congress as a tool that was intended to penalize automobile dealers who, to make a sale, "intentionally" tried to circumvent the Form 8300 filing requirement, so as to achieve the sale and to benefit a questionable customer. Congress never intended for these penalty provisions to be "revenue raising" provisions, like income or excises taxes. However, the undersigned counsel for this corporate taxpayer submits that this is exactly what results from the utilization of the type of interpretation placed on these statutes by the IRS' representatives here, which interpretation has resulted in the IRS asserting that Bale Chevrolet, Inc. had to pay the federal government another $100, 000 of its earnings (or its assets, if the Company operated at a loss for federal income tax purposes) during these three years. Bale Chevrolet, Inc. has clearly met the "spirit" of the law, with its "good faith" filings, including filings on transactions that the IRS determined (under rather complex regulations) were not required of by the Company. These laws and their severe penalty provisions were enacted by Congress to insure that the automobile dealerships of this country provided information to the IRS, who in turn shared such information with federal law enforcement agencies, especially those agencies involved "principally in identifying transactions by drug dealers" or other individuals who are attempting to commit criminal activities. Thus, the "technical" and harsh interpretation of these penalty provisions by the IRS representatives, in this factual setting, did <u>not</u> result in the type of action Congress intended when the statue in question was enacted. Instead, the position taken by the IRS in this audit is, as a practical matter, one of attempting to impose a confiscatory fine on Bale Chevrolet, Inc., so as to raise additional revenue for general operations of the federal government.

Bale Chevrolet, Inc., as a business with civic and public responsiblities to the members of the community that it serves, has established operating policies that support its position regarding an adherence to the "anti drug" reasons for which the penalties in question were enacted by Congress. Bale Chevrolet, Inc. has established and enforces

a very, very strong "zero tolerance" drug policy for its employees, and has done so for years.

John H. Bale, as the owner and President of Bale Chevrolet, Inc., has, years ago, established a "zero tolerance" policy for drug use by employees of this corporate taxpayer. The company has an established policy of random drug testing of all employees and all new employees must undergo a drug test before being hired. In addition, Mr. Bale has arranged with federal and local law enforcement officers to periodically have drug dogs make unannounced searches of the company's premises, to make sure that drugs are not kept or used in the workplace by the company's employees. Also, in any case in which there is a theft or an accident involving a company employee, all company employees who may have been involved are subjected to drug tests. These are also not the usual urine tests that can sometimes be passed by active drug users. Instead, the drug testing used by the company is virtually fool proof in its application.

The imposition and use of this "anti drug policy" resulted in a number of employees quitting when the dealership first established the "zero tolerance" policy. In fact, several of the company's employees, who were substantial producers of business, left and became associated with other local dealerships that do not have this stringent type of drug testing policy. There, these former employees are still substantial producers for the competitors of Bale Chevrolet, Inc.. Notwithstanding that fact, John H. Bale has committed his dealership to being a 100% "drug free" business and he sees that that policy is constantly and consistently enforced.

Therefore, the undersigned submits that a business that has established such a policy with regard to "drug use" by its employees should not be held, by a strained interpretation of the statutes in question by the IRS' audit personnel, to be placed in the same category as dealerships that willing solicited the type of business from criminal elements that the "reporting requirement" for Forms 8300 was enacted to stop.

Bale Chevrolet, Inc. submits that it has, more than any other dealership in the State of Arkansas, established and adhered to a "zero tolerance" policy with regard to use of drugs or drugs in the workplace. The preparation and filing of Forms 8300 by businesses involved in the automobile sales business is a requirement of federal law that is intended to assist law enforcement agencies in the prevention of interdiction of, financial transactions involving drug dealers and users, and other non law abiding individuals. This corporate taxpayer submits that its record involving the prohibition of illegal drugs in its workplace is the most stringent of any automobile dealership in the State of Arkansas. Because of this fact, Bale Chevrolet, Inc. submits that the representatives of the IRS that review this Claim for Refund must consider the "purpose for the penalty provision" and the company's strong "anti drug stance," when assessing whether the failure of this corporate taxpayer to timely file the four Forms 8300 was "intentional," as was alleged by Revenue Agent Miller, or that the failure was "inadvertent," as claimed by the Company, which would make it liable for the much lower $50 or $100 per Form 8300 transaction.

A thorough analysis of each of the transactions involving the filing of Forms

8300 by Bale Chevrolet, Inc., during the three-year period of this audit, should be considered by representatives of the IRS. This corporate taxpayer submits that it should not have been subjected to the imposition of the confiscatory penalties of more than $100,000, as assessed by the IRS because of the Company's apparent failure to timely file the four Forms 8300 during the three year period covered by the audit in question was not "intentional." There was absolutely no warning given to Bale Chevrolet, Inc., by the IRS' two prior audits on the draconian position the IRS took with regard to the Form 8300 filing requirement in this "third audit."

        The standards for the IRS' imposing such confiscatory penalties have <u>not</u> been met by the facts of this disputed audit assessment. Further, if the IRS intends to follow such a draconian enforcement policy, with regard to automobile dealerships' compliance with the filing requirements for Forms 8300, then the IRS must first make such enforcement policy known, generally, to the ownership and employees of Bale Chevrolet, Inc., and to other similarly situated automobile dealers in the State of Arkansas, before such drastic enforcement action is taken, without notice, after two audits were the Company appeared to "pass muster with flying colors." This type of stringent enforcement policy cannot be imposed by the IRS on an "ad hoc" audit basis, because such policy does <u>not</u> give the dealerships of this state a fair opportunity to take the "extra actions" that will be necessary to comply with the IRS' apparently stringent enforcement policy, that is going to be imposed on a "retroactive" basis.

        The maximum penalty due on these four questioned transactions would have to be the $100 per transaction penalty, the same as was imposed by the IRS and agreed to on the single questioned transaction in the IRS' 1996 audit). Such assertion is also based upon the apparent findings of the District Court Judge in the case of <u>Kruse, Inc. v. United States</u>, 213 F. Supp. 2d. 939 (N.D. Ind. 2002) (the only reported case on the issue of "intentional disregard of the Form 8300 filing requirement), as to what constitutes "intentional disregard" of the duty to file the Form 8300 under 26 U.S.C. §§ 6050I and 6721. It clearly appears that the four transactions of Bale Chevrolet, Inc. that were questioned by the IRS auditor fall outside of a clear delineation either way, i.e., whether a Form 8300 was required to be filed or not.

## CONCLUSION

        For the aforementioned reasons, Bale Chevrolet, Inc. submits that it is entitled to a full refund of the $100,200 in penalties, plus interest, pursuant to the provisions of 26 U.S.C. § 6721 and 6722, for its apparent failure to timely file Forms 8300 with regard to the four transactions in questions. Its failure to file such Forms 8300 was <u>not</u> "intentional," as alleged by the auditing Revenue Agent, but, instead, the Company submits that its failure in this regard was inadvertent and due to a normal turn over in business office personnel. Therefore, Bale Chevrolet, Inc. submits that it should only have had imposed against it the minimal fines provided by the provisions of 26 U.S.C. §§ 6721 and 6722, where such failures to file are deemed <u>not</u> to be intentional, but, instead, are due to oversight in the application of normal business practices.

The IRS has clearly "gotten the attention" of this corporate taxpayer with regard to this Form 8300 compliance issue. The Company has filed more Forms 8300, since this audit was completed, than it normally did in several years. However, in filing on so many transactions involving larger amounts of cash or cash equivalents (whether over $10,000, or not), the Company is getting rejections from the Detroit office of the IRS with regard to such filings. Clearly, the IRS must establish and utilize a "reasonable" audit enforcement policy, if it wants the useful help and assistance of the vehicle dealers of the country to try and help it help the IRS, in turn, help law enforcement agencies combat the criminal elements of this country in drying up their financial transactions.

Respectfully submitted,

Eugene G. Sayre

Form **2848**
(Rev. December 1997)

Department of the Treasury
Internal Revenue Service

# Power of Attorney
## and Declaration of Representative

▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only

Received by:

Name _____

Telephone _____

Function _____

Date ___/___/___

**Part I**   Power of Attorney (Please type or print.)

| **1   Taxpayer information** (Taxpayer(s) must sign and date this form on page 2, line 9.) | | |
|---|---|---|
| Taxpayer name(s) and address<br>Bale Chevrolet, Inc.<br>13101 Chenal Parkway<br>Little Rock, AR  72211 | Social security number(s)<br>⋮ ⋮<br>———————————— | Employer identification number<br><br>71 ⋮ 0009350 |
| | Daytime telephone number | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

| **2   Representative(s)** (Representative(s) must sign and date this form on page 2, Part II.) | |
|---|---|
| Name and address<br>John Earl<br>Fourth and Center Street, Suite 1300<br>Little Rock, AR  72201 | CAF No. ......................................<br>Telephone No. .....501-372-3275<br>Fax No. .....501-376-3643<br>Check if new: Address ☐     Telephone No. ☐ |
| Name and address<br>Eugene G. Sayre<br>Jack, Lyon & Jones, P.A.<br>3400 TCBY Tower, 425 West Capitol Avenue<br>Little Rock, AR  72201 | CAF No. ......................................<br>Telephone No. .....501-375-1122<br>Fax No. .....501-375-1027<br>Check if new: Address ☐     Telephone No. ☐ |
| Name and address | CAF No. ......................................<br>Telephone No. ......................................<br>Fax No. ......................................<br>Check if new: Address ☐     Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3   Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Penalties | Form 8300 | 1998-2000 |
| | | |
| | | |

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. (See instruction for **Line 4—Specific uses not recorded on CAF**.)  . . . . . . . . . ▶ ☐

**5   Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see instruction for **Line 5—Acts authorized**).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: ...............................

...................................................................................................................

...................................................................................................................

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the instructions for more information.*

**6   Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

For Paperwork Reduction and Privacy Act Notice, see the separate instructions.         Cat. No. 11980J         Form **2848** (Rev. 12-97)

**7   Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

a   If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . . . . . . . . . . . . .

b   If you also want the second representative listed to receive a copy of such notices and communications, check this box . . . . . . . . . . . . . . . . . . . . . . ▶

c   If you do not want any notices or communications sent to your representative(s), check here . . . . . . . ▶

**8   Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here . . . . . . . . . . ▶
**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9   Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, execut receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on beh of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| | | |
|---|---|---|
| _(signature)_ | Sec/Treas   5/24/01 | Secretary-Treasur |
| Signature | Date | Title (if applicable) |
| _Amy Shrum_ | | |
| Print Name | | |

| | | |
|---|---|---|
| Signature | Date | Title (if applicable) |
| Print Name | | |

---

**Part II**   **Declaration of Representative**

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a   Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

b   Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.

c   Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.

d   Officer—a bona fide officer of the taxpayer's organization.

e   Full-Time Employee—a full-time employee of the taxpayer.

f   Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).

g   Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).

h   Unenrolled Return Preparer—an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation—Insert above letter (a–h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Ark | _(signature)_ | 5-24-01 |
| A | Ark | _Eugene Payne_ | 5-24-01 |

Re:   <u>**Bale Chevrolet Company v. United States**</u>
      **U. S. D. C., E. D. Ark., Western Division**
      **Docket No.**

# COMPLAINT

# EXHIBIT C

IRS Department of the Treasury
Internal Revenue Service

OGDEN  UT  84201-0038

71127667855480380750

In reply refer to:  0435102235
Feb. 08, 2006   LTR 105C   0
71-0009350    199812 13 000   1
00903
BODC: SB

BALE CHEVROLET
% EUGENE G SAYRE
JACK LYON & JONES PA
425 W CAPITAL AVE 3400 TCBY TOWER
LITTLE ROCK   AR  72201

RECEIVED
FEB 16 2006
JACK, LYON & JONES, P.A.

CERTIFIED MAIL

Taxpayer Identification Number:  71-0009350
Kind of Tax:  8300
Amount of Claim :  $    27,375.01         54,636.15
                        27,375.01

Date of Claim(s) Received:   Jan. 10, 2005
Tax Period :   Dec. 31, 1998   Dec. 31, 1999
               Dec. 31, 2000

## WE COULDN'T ALLOW YOUR CLAIM

Dear Taxpayer:

WHY WE'RE SENDING YOU THIS LETTER
This letter is your notice that we've disallowed your claim for
credit for the period shown above.

WHY WE CANNOT ALLOW YOUR CLAIM
Our records show these penalties were previously reviewed by Appeals
and sustained.  Your reasons for not filing Forms 8300 timely and
correctly do not establish reasonable cause or show due diligence to
ensure compliance with the law.

IF YOU DISAGREE

You have the right to appeal our decision to disallow your claim.
You may represent yourself before Appeals.  You may have an attorney,
certified public accountant, or person enrolled to practice before
the Internal Revenue Service represent you.  To have someone
represent you, attach Form 2848, Power of Attorney and Declaration
of Representative, (or similar written power of attorney) to your
written statement.

You may request a small dollar case appeal for a disallowed claim
that is less than $25,000 or prepare a formal protest for a
disallowed claim over $25,000.

To request a small dollar case appeal for a claim, do the following:
   1.  State that you want to appeal.
   2.  List the disallowed items you disagree with and why you don't

```
                                                   0435102235
                        Feb. 08, 2006   LTR 105C   0
                        71-0009350   199812 13 000   1
                                                   00905
```

BALE CHEVROLET
% EUGENE G SAYRE
JACK LYON & JONES PA
425 W CAPITAL AVE 3400 TCBY TOWER
LITTLE ROCK  AR  72201

_____        _____ _____
Signature of Agent                      Enrollment Number  Date

HOW TO CONTACT US

If you have any questions, please call us toll free at 1-800-829-0115.

If you prefer, you may write to us at the address shown at the top
of the first page of this letter.

Whenever you write, please include this letter and, in the spaces
below, give us your telephone number with the hours we can reach you.
Also, you may want to keep a copy of this letter for your records.

Telephone Number ( )_____ Hours_____

                         Sincerely yours,

                         Deborah S. Decker
                         Field Dir., Accounts Management

Enclosure(s):
Publication 1